STATE OF NEW JERSEY, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT, v. PATSY JOHN TRUGLIA, JR., DEFENDANT-RESPONDENT AND CROSS-APPELLANT.

Argued December 13, 1983—Decided September 11, 1984.

*Larry R. Etzweiler*, Deputy Attorney General, argued the cause for appellant and cross-respondent (*Irwin I. Kimmelman*, Attorney General of New Jersey, attorney; *Larry R.*

*Etzweiler* and *Gilbert Miller,* Deputy Attorneys General, on the briefs).

*Donald T. Thelander,* Assistant Deputy Public Defender, argued the cause for respondent and cross-appellant *(Joseph H. Rodriguez,* Public Defender, attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

This appeal and cross-appeal pose issues of merger of criminal convictions entered pursuant to guilty pleas, and of defendant's waiver of any merger by virtue of his having pleaded guilty pursuant to a plea agreement. Defendant raised the merger issue for the first time on appeal.

The Appellate Division, in an unreported opinion, did not decide the issue of merger, nor did it conclude that defendant, by pleading guilty to both offenses, had waived his newly-raised contention that the convictions merged. Rather, the court below held that inasmuch as there had been no meeting of the minds on the plea agreement, the pleas would be vacated. It concluded further that the State should have the option of moving before the trial court for vacation of one of defendant's convictions and the accompanying sentence.

We granted the State's petition for certification, 94 *N.J.* 545 (1983), and defendant's cross-petition, 95 *N.J.* 203 (1983), to consider whether the two offenses merged; whether, if there was merger, defendant's guilty pleas amounted to a waiver of his merger argument; and finally, if there was merger and no waiver, whether defendant would be, as he puts it, "entitled to specific performance of a plea bargain when the charges that he pleads guilty to as a matter of law merge and other charges are dismissed".

I

Defendant, Patsy J. Truglia, and one John De Rosa were named in a fourteen-count indictment charging them with a

number of offenses arising out of a series of incidents that occurred in the early morning hours of August 6, 1980, in Long Branch. We derive much of our understanding of the facts from the presentence report, which shows that before the occasion in question there was bad blood between Truglia and the victim, Louis Acerra; that on August Sixth Acerra was in the Club 95 West in Long Branch, when he saw Truglia; that Acerra, fearing trouble and wishing to avoid it, left the bar; that as the victim was walking away from the area (having first stopped to speak to a friend sitting in a car), defendant hailed him, saying that he had heard Acerra had a gun, whereupon defendant displayed in his hand what appeared to be a gun; that Acerra ran north on Second Avenue, with defendant and De Rosa in pursuit; that while the chase was in progress, defendant fired one shot at Acerra "from a gun, which he had held in his right hand"; that in his effort to elude defendant, Acerra ran through hedges and yards and later ran to the area of his home, where he hid in some bushes; that while secluded in the bushes, the victim saw defendant and De Rosa approach his car, tear up the roof, and "fire a gun at it."

The presentence report further discloses that "[a]fter the defendant stopped chasing the victim, he went to the car [that] the victim had previously stopped at[,] * *. * leaned into the car for several seconds and while in this position, fired one shot from his gun * * *," striking the driver, William Patterson, in the right shoulder. Patterson was able to drive to the hospital for emergency treatment. As of the time of the presentence report the bullet was still lodged against Patterson's ribs and there were no plans to remove it, inasmuch as it presented "no hazard" at that time.

Our only other source of information about the significant events is the plea transcript, in which the factual basis for the guilty pleas was established as follows:

A. Well, it was trouble in the bar. I just remodeled the bar.

Q. What bar was that?

A. 95 West in Long Branch. And the guys came in, came in the night before causing trouble, threatened my son and me. And the next night they came back, one kid had a gun. A few of them chased him and I chased him myself. And I fired a gun at him.

Truglia was charged with two counts of attempted murder, two counts of aggravated assault, possession of a gun without a permit, possession of a gun by a convicted felon, and criminal mischief. After initially pleading not guilty, defendant negotiated a plea agreement pursuant to which he entered *retraxit* pleas of guilty to Counts II and III of the indictment. Count II accused Truglia of committing aggravated assault by "knowingly * * * pointing and discharging a firearm at Louis Acerra" and by "attempting to cause serious bodily injury" in violation of *N.J.S.A.* 2C:12–1b(1) (a second-degree crime, carrying a maximum sentence of ten years), and –1b(4) (a fourth-degree crime, with a maximum sentence of eighteen months). Count III charged defendant with possessing a handgun with the purpose of using it unlawfully against Acerra, contrary to the provisions of *N.J.S.A.* 2C:39–4a (a second-degree crime).

In exchange for the guilty pleas the prosecutor moved for dismissal of the remaining counts of the indictment, dismissal of another outstanding indictment, dismissal of the "DeMaio matter" then pending before the grand jury, and dismissal of a Long Branch Municipal Court complaint charging defendant with possession of less than twenty-five grams of marijuana. The prosecutor further agreed not to seek an extended term of imprisonment and undertook to recommend that any custodial term should run concurrently with defendant's sentence for violating probation on an unrelated prior conviction. Finally, and significantly, the prosecutor promised to recommend that the aggregate sentence not exceed fifteen years, with seven-and-one-half years of parole ineligibility.

The trial court sentenced defendant to seven years, with three-and-one-half years of parole ineligibility, on each count. The terms were to run consecutively, for a total of fourteen years with seven years mandatory minimum parole ineligibility,

concurrent with the term that defendant was then serving for parole violation.

Truglia's initial appellate brief claimed only that the sentence was excessive. It was not until his *pro se* supplemental brief was filed that he raised the merger question. The Appellate Division vacated the pleas without passing on the merger issue.

## II

■ Our first inquiry is whether there was a merger of the two offenses to which defendant pleaded guilty: aggravated assault upon Acerra under *N.J.S.A.* 2C:12–1b(1) and –1b(4), and possession of a handgun with the purpose of using it unlawfully against the person of Acerra under *N.J.S.A.* 2C:39–4a. The factual picture on which the guiding principles must be brought to bear is less than clear. There are no "findings" as such below, and the parties, not surprisingly, draw different conclusions from the recitation in the presentence report and the plea transcript. The difficulty stems from the want of precision in the elements of time, distance, and sequence of events—details that are usually of significance in any merger case. Appellate courts should not have to be concerned with the determination of those details, and henceforth we expect not to be.

For example, the sparse record does not enlighten us as to how much time elapsed between the beginning of the incident and the shot into Acerra's car, nor as to the distance between the Club 95 West and Acerra's home, nor as to at what point in the series of events it was that Patterson was shot. We conclude that under the circumstances defendant should bear the consequences of whatever ambiguity inheres in the record, inasmuch as he voluntarily pleaded to both offenses, failed to raise any merger issue until after sentencing, and derived a substantial benefit from the plea agreement. In that state of the case—negotiated plea, sentencing according to an agreement that benefits defendant, and merger argument first raised on appeal—we hold that defendant has the burden of demon-

strating, by a preponderance of the evidence, that the record supports his merger claim.

Defendant's argument in favor of merger is posed in terms of the test enunciated in *Blockburger v. United States,* 284 *U.S.* 299, 52 *S.Ct.* 180, 76 *L.Ed.* 306 (1932):

> The applicable rule is that where the *same act or transaction constitutes a violation of two distinct statutory provisions,* the test to be applied to determine whether there are two offenses or only one, is *whether each provision requires proof of an additional fact which the other does not.* [*Id.* at 304, 52 *S.Ct.* at 182, 76 *L.Ed.* at 309 (emphasis added).]

Resorting to the *Blockburger* rule, defendant contends that identical facts established the commission of both offenses; that the conviction for aggravated assault—attempting to inflict serious bodily injury on Acerra by shooting at him—could be sustained only by the fact that defendant possessed the gun with the intent to shoot Acerra; and that inasmuch as his possession and use of the gun in itself elevates what would otherwise be simple assault to the level of aggravated assault, defendant has already been punished by virtue of his conviction for aggravated assault on the basis of his possession of the pistol with the intent to use it unlawfully against Acerra. He relies as well on *State v. Dively,* 92 *N.J.* 573 (1983), which he says gives this Court's approval to the *Blockburger* test; *State v. Mirault,* 92 *N.J.* 492 (1982), with its emphasis on the absence of separation in time to show that two separate offenses occurred, *id.* at 503, as defendant contends is likewise lacking in this case; and *State v. Best,* 70 *N.J.* 56 (1976), which Truglia says compels merger when both offenses are committed at the same time and place, again as he argues for here.

The State, drawing different conclusions from the application of the stated authorities to this record, first analyzes the presentence report to support its contention that defendant did more than simply shoot at the victim (in which event the State acknowledges that there would be merger of the two offenses). It interprets the presentence report and plea transcript as depicting this scenario:

Having shot at and missed the victim, defendant pursued the victim to his home in an unsuccessful attempt to find him so that he could shoot at him again. Having failed to find the victim there, defendant, in apparent frustration, shot the victim's car instead.

Citing *Mirault, supra,* 92 *N.J.* 492, and *Best, supra,* 70 *N.J.* 56, the State argues for two separate incidents of criminal conduct: the aggravated assault, found in the "unsuccessful" shooting at Acerra; and the separate, unmerged conviction for possession of a handgun with intent to use it unlawfully against Acerra, as evidenced by defendant's subsequent armed pursuit of Acerra to his home.

In furtherance of its argument the State submits that with minor variations the Code of Criminal Justice has, in *N.J.S.A.* 2C:1–8 to –12, adopted the *Blockburger* test, under which the offenses are different if each requires proof of a fact not required by the other. *See State v. Goodman,* 92 *N.J.* 43, 55–56 (1983). This represents a more mechanical approach to merger than the flexible course formulated in *State v. Davis,* 68 *N.J.* 69 (1975), and followed thereafter, *see, e.g., State v. Mirault, supra,* 92 *N.J.* 492; *State v. Best, supra,* 70 *N.J.* 56:

Such an approach would entail analysis of the evidence in terms of, among other things, the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed. [*Davis, supra,* 68 *N.J.* at 81.]

For today's purposes, however, we need not probe the nuances of whatever differences there may be between the *Blockburger,* Code, and *Davis* tests for merger, for the result is the same: non-merger. It is clear to us that defendant has failed to sustain the burden of demonstrating merger. His position is fact-sensitive; and although the information available to the sentencing court—defendant's statements at the time of his plea as well as the presentence report, not contested by defendant in any relevant respect at the plea hearing—is ambiguous, it nevertheless is readily susceptible of the interpretation put on it by the State.

■ If we apply the *Blockburger* test, we see that the offenses are different in that each requires proof of a fact not required by the other. The count charging aggravated assault was based on two subsections of *N.J.S.A.* 2C:12–1b. Although subsection (4)—"knowingly under circumstances manifesting extreme indifference to human life points a firearm"—requires proof of a gun, subsection (1)—"attempts to cause serious bodily injury to another"—does not. The latter, therefore, differs materially from *N.J.S.A.* 2C:39–4, charging possession of a handgun with the purpose of using it unlawfully against the person or property of another. The subsection (1) aggravated-assault offense requires proof of defendant's attempt to cause serious bodily injury, not a necessary ingredient of the *N.J.S.A.* 2C:39–4a offense; the latter requires proof of possession of a firearm, not part of the subsection (1) aggravated assault charge.

Although the foregoing analysis produces satisfaction of the *Blockburger* test for non-merger—"each [statutory] provision requires proof of an additional fact that the other does not", 284 *U.S.* at 304, 52 S.Ct. at 182, 76 *L.Ed.* at 309—we confess that it may suffer from a certain sterility. Hence, we have found it more comfortable in recent years to eschew the "mechanical application of formulas" to resolve merger questions, *Mirault, supra,* 92 *N.J.* at 501, and to resort to the flexible approach of *Davis, supra,* 68 *N.J.* at 81.

■ Under a *Davis* analysis we focus on the episodic fragments of the events. The presentence report, not disputed by defendant, would permit the conclusion that the possession offense occurred when Truglia chased Acerra in a northerly direction on Second Avenue with a gun in his hand; that the aggravated assault under *N.J.S.A.* 2C:12–1b(4) occurred with the pointing of the handgun at Acerra and under *N.J.S.A.* 2C:12–1b(1) with the later chase of Acerra—possibly, but not certainly, after the wounding of Patterson—into the area of Acerra's home. A defendant who enters a plea generally to

multiple offenses has no right to insist that the plea be interpreted in the light most favorable to him. Rather, the trial court is entitled tö view such a plea most favorably to the State. The State's position gains even more weight on appeal from the belatedness of defendant's assertion of merger.

### III

■ Our conclusion that defendant has failed to satisfy the burden imposed on him to demonstrate merger renders unnecessary our consideration of his argument against waiver. However, in the interest of bringing some uniformity of disposition to an area that currently suffers from some confusion,[1] we offer the following, albeit by way of dictum.

The concept of merger implicates the prohibition against double punishment for a single offense. Whether that prohibition finds its roots in principles of double jeopardy, substantive due process, or some other legal tenet is an open question for this Court. *See Best, supra,* 70 *N.J.* at 61; *Davis, supra,* 68 *N.J.* at 77. So it will remain, for it is not now of any moment. It is enough that "[a]n attack on grounds of merger clearly implicates the substantive and constitutional rights of a defendant." *State v. Rodriguez,* 97 *N.J.* 263, 267 (1984).

---

[1]The State has filed an appendix containing nineteen unreported Appellate Division cases decided over the last five years. These cases are brought to our attention not as precedent, which is disallowed under Rule 1:36–3, but rather to demonstrate the uneven treatment that has been accorded the issue.

Of the cited cases, two held that the merger argument was waived by a bargained-for plea (*State v. Caban,* Docket No. A–5324–80T4; *State v. Gillespie,* Docket No. A–104–77) and one held it was not so waived (*State v. Rembert,* Docket No. A–4072–80T4). In addition, one case held it was not waived by defendant's failure to have raised it below (*State v. Lee,* Docket No. A–2741–81T4), and in four the court refused to decide the merger question because it had not been raised below (*State v. Harris,* Docket No. A–1701–81T4; *State v. Coe,* Docket No. A–4457–80T4; *State v. Middleton,* Docket No. A–2791–78; and *State v. Perrone,* Docket No. A–99–78).

The remaining cases in the appendix are either "plain error" cases in which the court ordered the merger required by the Code or are cases irrelevant to the instant case.

Irrespective of its conceptual source, the guiding principle is as stated in *Menna v. New York*, 423 *U.S.* 61, 62 n. 2, 96 *S.Ct.* 241, 242 n. 2, 46 *L.Ed.*2d 195, 197 n. 2 (1975), in which the Supreme Court held that a counselled guilty plea does not automatically waive a claim that "the charge is one which the State may not constitutionally prosecute." The Court concluded that although factual guilt is embraced by the guilty plea, nevertheless a double-jeopardy claim is not admitted away by the plea and therefore there is no waiver of that claim.

*Menna* was relied on by the Appellate Division in *State v. Garoniak*, 164 *N.J.Super.* 344 (1978), certif. den., 79 *N.J.* 481 (1979), for its determination that

[w]here the matter involves a claim of double jeopardy or a constitutional violation akin thereto, the State is precluded by the Constitution from haling a defendant into court on the criminal charge involved. Since the application of this type of constitutional protection would be to prevent a trial from taking place at all, a defendant may raise the applicable constitutional issue and obtain relief by reason thereof, notwithstanding that his conviction was entered pursuant to a counseled plea of guilty. [164 *N.J.Super.* at 348.]

The out-of-state cases on whether a guilty plea forecloses a claim of merger go in both directions. *Compare Matter of Butler*, 24 *Wash.App.* 175, 599 *P.*2d 1311 (1979) (no waiver after guilty plea to robbery and assault charges), *with United States v. Pratt*, 657 *F.*2d 218 (8th Cir.1978) (defendant's bargained-for plea waived double-jeopardy claim), *and Brown v. Maryland*, 618 *F.*2d 1057 (4th Cir.), *cert.* denied, 449 *U.S.* 878, 101 *S.Ct.* 224, 66 *L.Ed.*2d 100 (1978) (defendant's voluntary and intelligent guilty plea waived his double-jeopardy claims), *and Offut v. State*, 54 *Md.App.* 472, 458 *A.*2d 499 (Ct.Spec.App. 1983) (finding waiver of merger claim when defendant and counsel could make a "knowing and intelligent evaluation" of the evidence supporting each count).

We conclude that a holding of non-waiver of a claim of merger following guilty pleas is more consistent with our notions of fairness, limited however to the situation in which there has been no consideration given at the plea or sentencing hearing to the potential for merger of any of the offenses. As

we have said, when, as in this case, the question of merger is first raised on appeal, not having been adverted to below or subject to a specific waiver, defendant must establish the merger. There may, for example, be instances in which merger fairly leaps off the pages of the record, despite which it escaped the attention of everyone below. Under those circumstances a defendant should have little difficulty in bearing the burden that today's opinion casts upon him.

■ This is not such a case, and we would expect those instances to be rare indeed. To minimize their occurring, we suggest that the prosecutor and defense counsel be particularly alert to the potential for merger of the various charges to which a defendant may plead. The trial court may cover the merger situation by specific questions, and a defendant may be called upon, as part of a bargained-for plea, to waive any claim based on merger. Needless to say, should that occur, a defendant will not be heard to complain on appeal.

## IV

■ Finally, we address (again by way of dictum) defendant's contention that he is entitled to specific performance of the plea bargain when there is merger of the charges to which he pleaded guilty and other charges are dismissed. The State, on the other hand, would wish to move in the trial court for enhancement of the remaining sentence from seven years to the statutory maximum of ten years.

The issue is resolved by our decision in *State v. Rodriguez, supra,* 97 *N.J.* 263. In that case defendant received separate sentences for each underlying conviction. His appellate argument seeking merger of two of the convictions succeeded: two of the convictions merged and, in effect, were remolded into a single conviction. We held that defendant would be entitled to relief in the form of the vacation of one or both of the separate sentences, but that he would be subject to resentencing on the resultant merged conviction because "the legal basis for his

original sentences will have been removed or altered." 97 *N.J.* at 273-74.

The Court distinguished *State v. Ryan,* 86 *N.J.* 1, *cert.* denied, 454 *U.S.* 880, 102 *S.Ct.* 363, 70 *L.Ed.*2d 190 (1981), on the ground that in *Ryan* the defendant's challenge was to the sentence, whereas in *Rodriguez*—as here—defendant's merger argument attacked his underlying substantive convictions. 97 *N.J.* at 270. We concluded in *Rodriguez,* therefore, that there would be nothing unfair in defendant's being resentenced to a term not in excess of that originally imposed. *Id.* at 273.

> [W]hen, as in this case, defendant's underlying convictions are interdependent, justifying merger, the appellate court, vacating one of these sentences on the vacated conviction, can also in its sound discretion vacate the sentence on the remaining conviction when the sentences as imposed were themselves interrelated.

> \*      \*      \*      \*      \*      \*      \*      \*

> [T]he appeal of defendant's underlying convictions resulting in a merger removed any legitimate expectation of finality with respect to his original sentence. Indeed, defendant's appeal grounded on merger presupposed that the two offenses constituted a whole, evidencing an expectation that an appropriate sentence could be imposed for the whole not to exceed the sentence imposed for the parts. Consequently, he may be resentenced without offending constitutional principles of double jeopardy, notwithstanding his initial commencement of the sentencing term, providing that any new sentence is in accordance with the substantive punishment standards under the Code and not in excess of the sentence originally imposed. [97 *N.J.* at 415.]

Hence, had Truglia succeeded on his merger and non-waiver arguments, we would remand to the trial court to permit the State to move to vacate one of the convictions and sentences and to move for enhancement of the sentence on the remaining, merged conviction. However, inasmuch as we have rejected defendant's merger argument, we reverse the judgment of the Appellate Division and reinstate the judgments of conviction.

*For reversal and reinstatement*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*Opposed*—none.