**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3748-18

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MATTHEW L. EVANS,
a/k/a MATTHEW EVAN,

    Defendant-Appellant.

_____

Argued January 25, 2022 – Decided July 28, 2022

Before Judges Fisher, DeAlmeida and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Warren County, Indictment Nos. 18-06-0227 and 18-09-0324.

Alison Gifford, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Alison Gifford, of counsel and on the briefs).

Naya A. Tsang, Assistant Prosecutor, argued the cause for respondent (James L. Pfeiffer, Warren County Prosecutor, attorney; Dit Mosco, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury convicted defendant, Matthew Evans, of first-degree strict liability for drug induced death, N.J.S.A. 2C:35-9(a), two counts of third-degree possession with intent to distribute a controlled dangerous substance, N.J.S.A. 2C:35-5(b)(5), and third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1).

Defendant argues that the trial court erred in admitting the investigating detective's testimony about how he knew defendant from previous encounters in the community under N.J.R.E. 403, as well as by admitting other-crimes evidence pursuant to N.J.R.E. 404(b) during the State's rebuttal case. Defendant also appeals the sentence, contending that certain counts should have merged, and that the sentencing court failed to place on the record its factual support for the aggravating factors. We affirm in part and reverse in part for the reasons that follow.

I.

On February 2, 2018, Travis Vickerman died in his parents' home of a drug overdose.[1] Police investigators responded to the home to take photographs

---

[1] When the victim's blood was tested, the medical examiner found Prozac, Hydroxycarbazepine, caffeine, a blood alcohol level of .136, and thirteen

and collect evidence. At the scene, Detectives Kyle Hayes and Shane Zaro collected seven bags of Fentanyl, a straw, and a cell phone, all from the victim's room.[2] The cell phone was lying next to the victim. Detective Zaro viewed the contents of the phone and saw a phone number contact titled, "Matt." Detective Zaro recognized that number because defendant was cooperating with the police on a different case.

A neighbor reported to Detective Hayes that on February 2 he observed a yellow compact car in front of victim's house. Detective Zaro, who had seen defendant driving a vehicle fitting the description, interviewed the car's owner, Amanda Gild. Detective Zaro learned that Gild drove defendant to the victim's house. When they arrived, defendant went around to the back of the home. After some delay, Gild texted defendant to hurry up, and shortly thereafter he came out.

Detective Zaro obtained a search warrant for defendant's phone. The contents of the phone revealed a text message exchange between defendant and

---

nanograms per millimeter of fentanyl. The examiner attributed the cause of death to acute fentanyl toxicity.

[2] A friend of the victim, Dana Baccetta, consented to police seizure of the phone because she was its owner. She purchased it for the victim's use.

A-3748-18

the victim. Based on his experience investigating illegal drug transactions, Detective Zaro concluded the messages showed a drug buy, where the victim agreed to buy ten bags of heroin in exchange for eighty dollars. However, at trial, defendant testified that the parties had a lengthy history of illegal transactions. Defendant would only provide marijuana to the victim, and in turn, the victim would sell him heroin. Defendant testified that the text conversation meant the victim had obtained heroin and wanted to trade it for cash or marijuana. Defendant went on to testify that he did not possess heroin on the day of victim's death.

Defendant was indicted on four charges, one count of first-degree strict liability for drug induced death, N.J.S.A. 2C:35-9(a), two counts of third-degree possession with intent to distribute a controlled dangerous substance, N.J.S.A. 2C:35-5(b)(5), and third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1).

At trial, defendant objected to Detective Zaro's testimony regarding his recognition of defendant's cell phone number on the victim's cell phone. During sidebar, the parties agreed to permit the State to ask questions on direct that would inform the jury how the detective knew defendant. Once Detective Zaro's direct continued, the court interjected and informed the jury that the State's line

4

of questioning could create speculation, contrary to the constitutional rights afforded to criminal defendants.  The court granted the State the opportunity to cure the defect, which it did.  The court also instructed the jury that speculation is not evidence.

After defendant rested, the court held a N.J.R.E. 104 hearing to determine whether Gild could testify as a rebuttal witness for the State.  The court considered Gild's testimony about defendant's action of February 2 in two segments: defendant's possession of heroin and his sale of heroin to her.

The court first addressed Gild's testimony about defendant's possession of heroin.  It found that Gild's testimony was rebuttal evidence, offered to contradict defendant's testimony that he did not possess heroin on February 2. The court found that Gild's testimony was not intrinsic evidence because it was not probative of the charged offenses.  Next, using the four factors of State v. Cofield, 127 N.J. 328, 338 (1992), the court found Gild's testimony relevant to defendant's credibility.  Defendant testified that he did not have heroin on February 2, and the court found the State had a right to counter that testimony. The court proceeded to find Gild's testimony about defendant's possession of heroin similar in kind and reasonably close in time to the offenses charged.  The court concluded that her testimony was clear and convincing, and its probative

value was not outweighed by prejudice. The court concluded Gild's testimony on possession satisfied the Cofield test and was admissible.

The court then turned to Gild's testimony about defendant 's sale of heroin to her. The court found Gild's testimony was not intrinsic evidence, and it would divert the jury from a reasonable and fair evaluation of the evidence relevant to his charges. The court found that any curative instruction it gave the jury would be inadequate. Accordingly, it barred Gild's testimony regarding defendant's sale of heroin to her.

After the jury convicted defendant on all counts, the court sentenced him to twenty years on the strict liability for drug induced death count, subject to the No Early Release Act. The court sentenced defendant to five years' incarceration on each of the three drug related charges, to be served concurrently to the twenty-year sentence. On appeal, defendant raises the following issues:

> POINT I
>
> DEFENDANT WAS DEPRIVED OF DUE PROCESS AND A FAIR TRIAL BY THE ADMISSION OF AN UNCHARGED ACT OF HEROIN POSSESSION
>
>> A. EVIDENCE OF DEFENDANT'S HEROIN POSSESSION SHOULD HAVE BEEN EXCLUDED UNDER N.J.R.E. 404(B)

A-3748-18

B. EVIDENCE OF DEFENDANT'S HEROIN POSSESSION WAS NOT ADMISSIBLE AS "INTRINSIC EVIDENCE"

POINT II

THE TRIAL COURT ERRED IN FAILING TO GRANT A MISTRIAL BASED ON OFFICER ZARO'S IMPROPER TESTIMONY IMPLICATING EVAN'S IN CRIMINAL ACTIVITY

POINT III

COUNTS TWO, THREE AND FOUR SHOULD HAVE MERGED WITH COUNT ONE

POINT IV

DEFENDANT'S 20-YEAR SENTENCE IS EXCESSIVE AND THE COURT FAILED TO EXPLAIN THE REASONS FOR ITS IMPOSITION

II.

We afford great deference to the trial court's admission of other-crimes evidence. State v. Gillispie, 208 N.J. 59, 84 (2011). We only disturb the court's decision "where there is a clear error of judgment . . . ." State v. Rose, 206 N.J. 141, 158 (2011) (quoting State v. Barden, 195 N.J. 375, 391 (2008)). "The admissibility of such evidence is left to the sound discretion of the trial court, as that court is in the best position to conduct the balancing required under

Cofield due to its 'intimate knowledge of the case.'" Gillispie, 208 N.J. at 84 (quoting State v. Covell, 157 N.J. 554, 564 (1999)).

Under N.J.R.E. 404(b), "evidence of other crimes, wrongs, or acts" cannot be used "to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition" but may be used "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute." The party seeking to admit this evidence must show that the probative value of the evidence is not outweighed by its apparent prejudice. State v. Reddish, 181 N.J. 553, 608-09 (2004).

To meet this burden, the moving party must show that the evidence passes the Cofield test. Regarding Cofield's first prong, for evidence to be relevant to a material issue it must have "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." Rose, 206 N.J. at 160.

The second prong "requires that the other-crime evidence be similar in kind and reasonably close in time to the alleged crime, [but it] is implicated only in circumstances factually similar to Cofield." State v. Skinner, 218 N.J. 496, 515 (2014). In Cofield, "the State sought to introduce evidence establishing the defendant's constructive possession of drugs during an illegal-drug street

8                                                                      A-3748-18

encounter that occurred subsequent to the drug incident that was the subject of the prosecution." State v. Williams, 190 N.J. 114, 131 (2007). "The State sought to admit that similar and close-in-time other-crimes evidence as relevant to prove the defendant's possession of drugs in the charged offense, an element that was hotly contested." Ibid.

The third prong requires the evidence of the other crime to be clear and convincing. Cofield, 127 N.J. at 338. The clear and convincing standard may be satisfied by uncorroborated testimonial evidence. State v. Hernandez, 170 N.J. 106, 127 (2001) (citations omitted). Additionally, the trial court may consider the surrounding circumstances to find adequate "support that the third prong of Cofield was satisfied." Rose, 206 N.J. at 163.

The final prong is a balancing test between the risk of prejudice and probative value of the evidence. Case law instructs the trial court to consider "[i]f other less prejudicial evidence may be presented to establish the same issue . . . ." Id. at 161 (alteration in original) (quoting Barden, 195 N.J. at 392). The court should exclude the evidence if there is another way to establish the same issue. Ibid. While the fourth prong is a stringent balancing test, "our courts have not frequently excluded highly prejudicial evidence under the fourth prong

of Cofield." State v. Garrison, 228 N.J. 182, 198 (2017) (quoting State v. Long, 173 N.J. 138, 162 (2002)).

Moreover, the court must sanitize other-crimes evidence, Barden, 195 N.J. at 390, and give a limiting instruction to the jury. Skinner, 218 N.J. at 516. Sanitizing evidence "accommodates the right of the proponent to present relevant evidence and the right of the objecting party to avoid undue prejudice." Barden, 195 N.J. at 390 (citations omitted). Courts sanitize other-crime evidence by "confining its admissibility to those facts reasonably necessary for the probative purpose . . . ." State v. Fortin, 318 N.J. Super. 577, 598 (App. Div. 1999).

"[T]he court's [limiting] instruction 'should be formulated carefully to explain precisely the permitted and prohibited purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction to which it is required to adhere.'" Barden, 195 N.J. at 390 (alteration in original) (quoting Fortin, 162 N.J. at 534). The limiting instruction "should be given when the evidence is presented and in the final charge to the jury." Ibid. (citing Fortin, 162 N.J. at 534-35).

III.

A.

We first address the other-crimes evidence. The trial court performed a Cofield analysis, so we afford its analysis deference. The court correctly found that Gild's other-crimes testimony satisfied Cofield's first prong. The evidence was relevant because Gild's testimony went to defendant's credibility at trial. Next, Gild's possession testimony easily surmounts the second Cofield prong. The time frame of the possession Gild refers to is just before Gild drives defendant to the victim's house. Similarity in kind was shown because the drug possessed was heroin, the same drugs that defendant was accused of selling to the victim.

Regarding Cofield prong three, the record shows Gild's evidence of defendant's heroin possession was clear and convincing. In addition to her testimony, Detective Zaro testified that the text message exchange showed defendant and victim were setting up a transaction for heroin before defendant arrived at victim's house. On the fourth Cofield prong, the court found that the risk of prejudice caused by Gild's testimony did not outweigh its probative value. Defendant denied any heroin possession, and the State had the right to challenge

11

his credibility. Defendant admitted on the witness stand that he had possessed heroin previously.

The court properly instructed the jury on the limited purposes for which Gild's testimony could be used. The court sanitized her testimony for the jury, barring the State from asking Gild any questions regarding her heroin transactions with defendant. We find the trial court reached the proper conclusion in admitting Gild's testimony of defendant's heroin possession on February 2, and we discern no clear error of judgment.

The possession evidence was not intrinsic. When reviewing evidence of uncharged bad conduct, the trial court must determine whether the evidence is admissible under other-crimes analysis, or whether the evidence is "intrinsic to the charged crime, and thus need only satisfy the evidence rules relating to relevancy, most importantly Rule 403." State v. Brockington, 439 N.J. Super. 311, 325 (App. Div. 2015) (citations omitted). Intrinsic evidence falls into two categories. Id. at 327. One category is evidence that directly proves the charged offense. Ibid. Under this category, the court must consider "whether the evidence has probative value as to the charged offense." Ibid. The second category is contemporaneous acts. These are "uncharged acts performed

contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime." Rose, 206 N.J. at 180.

The challenged evidence goes to the credibility of defendant. It cannot directly prove the crime defendant is charged with, and nothing in the record links defendant's possession of heroin at the time he met with Gild to his possession of heroin when he met with the victim later. While the possession evidence was contemporaneous, it was solely in the case to impeach defendant and does not facilitate commission of the charged crime. The court was correct in declining to call Gild's testimony intrinsic evidence.[3]

## B.

We turn to defendant's next argument that the trial court should have granted a mistrial because Detective Zaro's testimony created an "inescapable inference that defendant was involved in criminal activity." Defendant argues that the court's jury instruction and further questioning by the State failed to remedy the inference created that the detective knew defendant from some prior criminal activity.

N.J.R.E. 403 states:

---

[3] The court properly barred Gild's testimony that defendant sold her heroin.

Except as otherwise provided by these rules or other law, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of:

(a) Undue prejudice, confusion of issues, or misleading the jury; or

(b) Undue delay, waste of time, or needless presentation of cumulative evidence.

We give a trial court's evidentiary decisions under N.J.R.E. 403 substantial deference. State v. Cole, 229 N.J. 430, 449 (2017). We only reverse if the evidentiary ruling "constitutes an abuse of discretion." Ibid. (quoting State v. Feaster, 156 N.J. 1, 82 (1998)). Abuse of discretion occurs in this context where "the probative value of the evidence 'is so significantly outweighed by [its] inherently inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation of the' issues." State v. Santamaria, 236 N.J. 390, 406 (2019) (alteration in original) (quoting Cole, 229 N.J. at 448). However, "[e]ven when evidence is 'highly damaging' to a defendant's case, 'this cannot by itself be a reason to exclude otherwise admissible and probative evidence.'" State v. Outland, 458 N.J. Super. 357, 369 (App. Div. 2019) (quoting Brockington, 439 N.J. Super. at 333).

The party seeking exclusion has the burden of convincing the court that N.J.R.E. 403 applies. Santamaria, 236 N.J. at 407. A trial court must engage in

14

"fact-specific evaluation of the evidence in the setting of the individual case" to determine whether it will admit the evidence.  Cole, 229 N.J. at 448.

Defendant argues Detective Zaro's testimony was unduly prejudicial because it suggested that defendant was involved in prior criminal activity.  At trial, the State argued that the evidence was probative because it showed the jury how the police found defendant and how he became a suspect.  The fact that Detective Zaro recognized defendant's number did not necessarily lead to the conclusion that there was a criminal element to their relationship.  Indeed, the more probative and damaging testimony on defendant's prior criminal history was his own, not Detective Zaro's.  Defendant testified at trial that he had previously been charged with possession of heroin, that he planned to purchase heroin from the victim, and that he planned to sell or trade marijuana to the victim in exchange for heroin.

Additionally, the court and the parties agreed to sanitize the information. During sidebar, the parties agreed to permit the State to pose Zaro questions on direct to inform the jury as to how he knew defendant.  During Zaro's testimony, the court stepped in.  It acknowledged that line of questioning could create speculation.  The court also instructed the jury that speculation is not evidence.

The court's instruction and the State's follow up questions sufficiently addressed the issue of undue prejudice.

Detective Zaro's testimony may have been damaging, see Outland, 458 N.J. Super. at 369-70, but it did not "divert the jurors from a reasonable and fair evaluation of the issues." Santamaria, 236 N.J. at 406 (internal quotation marks and citation omitted). Moreover, "[e]ven when evidence is 'highly damaging' to a defendant's case, 'this cannot by itself be a reason to exclude otherwise admissible and probative evidence.'" Outland, 458 N.J. Super. at 369 (quoting Brockington, 439 N.J. Super. at 333).

## C.

Defendant next argues that the sentencing court erred by not merging counts two, three, and four with one. The State concurs, but notes merger would not affect the sentencing of defendant.

Merger is based on the principle that "an accused [who] has committed only one offense cannot be punished as if for two." State v. Dillihay, 127 N.J. 42, 46 (1992) (alteration in original) (quoting State v. Cole, 120 N.J. 321, 325-26 (1990)). There are two steps used to analyze merger issues. First, the court considers "whether the legislature has in fact undertaken to create separate offenses." State v. Miller, 108 N.J. 112, 116 (1987) (quoting State v. Davis, 68

16

N.J. 69, 77-78 (1975)).  This step focuses on the elements of the crime and the Legislature's intent in creating them.  Ibid.  Second, the court must consider the "episodic fragments of the events."  Ibid. (quoting State v. Truglia, 97 N.J. 513, 521 (1984)).  The second step focuses on

> the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of the accused; and the consequences of the criminal standards transgressed.
>
> [Id. at 117 (quoting Davis, 68 N.J. at 81).]

The two-step analysis leads us to conclude that counts two, three, and four should be merged into count one.  The parties agree.

## D.

Next, defendant contends the trial court "violated its obligations to engage in a qualitative analysis of the relevant aggravating and mitigating factors and to explain the reasons behind [defendant's] sentence."  "Appellate review of sentencing is deferential, and appellate courts" should not "substitute their judgment for those of our sentencing courts."  State v. Case, 220 N.J. 49, 65 (2014) (citing State v. Lawless, 214 N.J. 594, 606 (2013)).  "But the deferential standard of review applies only if the trial judge follows the Code and the basic

17

precepts that channel sentencing discretion." Ibid. To determine whether the trial court abused its discretion, a reviewing court must determine whether

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [State v. Fuentes, 217 N.J. 57, 70 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

"An appellate court may also remand for resentencing if the trial court considers an aggravating factor that is inappropriate to a particular defendant or to the offense at issue." Ibid. (citing State v. Pineda, 119 N.J. 621, 628 (1990)). However, a sentencing court must do more than merely compare the number of aggravating and mitigating factors. See id. at 72-73. The sentencing court must explain how they arrive at a sentence and support their findings of aggravating and mitigating factors with facts from the record. Case, 220 N.J. at 65; R. 3:21-4(g).

We give deference to the sentencing court where it properly follows the Code and the supporting precepts. The record does not show that the court met that standard here. While the court made findings as to which aggravating factors it chose to balance against mitigating factors, it did not place on the

record any facts in support of aggravating factor findings. In its only relevant reference to aggravating factors, the court stated: "[i]n reviewing the statutory factors I find three aggravating factors, three, the risk of re-offense, six, the extent of [defendant's] prior criminal record and the seriousness of the offenses for which [defendant has] presently been convicted, and nine, the need to deter." After supporting its mitigating factor findings with facts, the court found that the aggravating factors substantially outweighed the mitigating factors. We cannot conclude that the "trial judge follow[ed] the Code and the basic precepts that channel sentencing discretion." Case, 220 N.J. at 65.

We remand to the court in order to address this oversight and perform a more fulsome aggravating and mitigating factor analysis at resentencing. In light of this remand, we do not reach the excessive sentence issue.

Affirmed in part, reversed in part, and remanded for resentencing consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION