731 A.2d 482

IN RE COMMITMENT OF W.K.

Argued February 17, 1999—Decided April 28, 1999.

*Bernadette N. DeCastro,* Assistant Deputy Public Defender, argued the cause for appellant (*Ivelisse Torres,* Public Defender, attorney).

*Susan B. Gyss,* Assistant Prosecutor, argued the cause for respondent (*Fred J. Theemling, Jr.,* Hudson County Prosecutor, attorney).

PER CURIAM.

When a person accused of a crime is acquitted by reason of insanity, the accused may be held in continued confinement if the person is a danger to self or others and is in need of medical treatment. We describe such a person as being on *Krol* status, a reference to *State v. Krol,* 68 *N.J.* 236, 344 *A.*2d 289 (1975), which established the standard for such commitments. The question in this appeal concerns the maximum term for which a person found not guilty by reason of insanity (NGI) may remain confined under *Krol* status.

I

W.K. is confined at Greystone Psychiatric Hospital. He has been institutionalized since his arrest in December 1983. On December 4, 1983, W.K., armed with a large butcher knife,

approached a police officer and demanded the officer's pistol. The officer attempted to grab the knife. During the struggle for the knife, W.K. obtained possession of the pistol and attempted to shoot the officer in the stomach. A Hudson County grand jury charged W.K. with the armed robbery of the gun, attempted murder and aggravated assault upon the officer. In 1988, the court found defendant NGI. Defendant suffered from chronic-paranoid schizophrenia. Pursuant to *N.J.S.A.* 2C:4-8b(3), defendant was committed to a state psychiatric hospital until he no longer presented a danger to himself or others. At a periodic review hearing in 1997, an examining physician found that W.K. continued to suffer from paranoid schizophrenia. His prognosis was guarded, and the physician concluded that he remained a potential danger to himself and the community if released.

W.K. claimed that the maximum sentence that he could have received on any one of the offenses charged, had he not been found NGI, would have been a ten-year term. He therefore argued that his *Krol* status must be terminated because he had been confined for almost fifteen years, well beyond the maximum period of imprisonment authorized by *N.J.S.A.* 2C:4-8b(3). The trial court rejected W.K.'s argument, reasoning that the attempted murder charge was a first-degree offense with a maximum sentence of twenty years. W.K. appealed, arguing that in 1983 attempted murder carried a maximum ten-year term, and that he no longer posed a danger to himself or society.

In an unreported opinion, the Appellate Division affirmed the continuation of W.K.'s *Krol* status. It found that he was still dangerous. The court concluded that his maximum ordinary term should be calculated consecutively for each of the offenses. The court held

> [t]hat such maximum *Krol* exposure is not further reduced by merger and [consecutive sentence] considerations is not only required by the plain language of the statute, but is fully consistent with the overriding goals of treatment and protection of society which *Krol* procedures are designed to meet. That is to say, the constitutional protections accorded a *Krol* defendant are not derived from merger or [consecutive sentence] considerations, but rather the need to limit *Krol* status to effective treatment and to continued *Krol* status only so long as the

> defendant is a danger to [self] or others, subject to an outer limit of the aggregate of the maximum "ordinary" exposure on each charge.

Because there were multiple counts in the indictment, including several forms of assault, the outer limit of the aggregate maximum ordinary terms was sixty-nine years. We granted W.K.'s petition for certification. 156 *N.J.* 407, 719 *A.2d* 639 (1998).

## II

An acquittal by reason of insanity terminates the criminal proceedings against an accused, unless the accused remains mentally ill and in need of involuntary commitment. In that case the accused can be involuntarily committed. Because an involuntary commitment is a deprivation of liberty, "this power of the State is constitutionally bounded." *In re S.L.*, 94 *N.J.* 128, 137, 462 *A.2d* 1252 (1983). After the defendant is committed, periodic review hearings (*Krol* hearings) are held in a criminal proceeding on notice to the prosecutor to determine if continued involuntary commitment is warranted. *In re Commitment of Edward S.*, 118 *N.J.* 118, 130, 570 *A.2d* 917 (1990). Generally, the hearing is conducted pursuant to the laws governing civil commitments, except that the burden for establishing the need for continued commitment is by a preponderance of the evidence, whereas in a civil commitment proceeding it is by clear and convincing evidence. *Id.* at 130 n. 4, 570 *A.2d* 917. The lesser burden of proof continues during the maximum period for which imprisonment could have been imposed as an ordinary term of imprisonment for the charges on which the defendant has been acquitted by reason of insanity, after giving credit for all time spent in confinement for the charges. *N.J.S.A.* 2C:4–8b(3).

The statutory scheme governing the commitment of NGI individuals is set forth in *N.J.S.A.* 2C:4–8b(3):

> The defendant's continued commitment, under the law governing civil commitment, shall be established by a preponderance of the evidence, during the maximum period of imprisonment that could have been imposed, as an ordinary term of imprisonment, for any charge on which defendant has been acquitted by reason of insanity. Expiration of that maximum period of imprisonment shall be calculated

by crediting the defendant with any time spent in confinement for the charge or charges on which the defendant has been acquitted by reason of insanity.

As noted, the Appellate Division concluded that the calculation of the maximum period of imprisonment "is the maximum possible 'ordinary' sentence for *each* NGI charge which governs the *Krol* time frame." (Emphasis added.) Defendant disagrees. He argues that *N.J.S.A.* 2C:4–8b(3) is plainly limited to the maximum period of imprisonment that could have been imposed, for "*any* charge" on which the defendant has been acquitted by reason of insanity, meaning any one charge. W.K. argues that the Appellate Division substituted the word "each" where the Legislature clearly provided "any." W.K. reasons that by using the word "any," the Legislature intended that the maximum ordinary term would not be the aggregate of each charge but that of the most severe charge for which a defendant was found NGI. *Cf. State v. Hawkins,* No. C.A.1876, 1998 WL 663222 at *2 (Ohio Ct.App. Sept. 23, 1998) (final termination of commitment occurs upon expiration of maximum prison term that defendant could have received if defendant had been convicted of most serious offense charged).

AOC Directive # 9–96 supports W.K.'s position. The Directive instructs trial court judges in criminal cases that

[i]n *Krol* cases where commitment is ordered, the maximum sentence that could have been imposed for any charge on which the defendant has been acquitted by reason of insanity should be set forth by the judge in the [sentencing] judgment. *N.J.S.A.* 2C:4–8b(3). Additionally, counsel should be heard with respect to the possible merger or other appropriate disposition of the remaining charges.

## III

In a refreshing display of candor, the Hudson County prosecutor acknowledged that the Appellate Division opinion had given the State more than it had realistically wished from its appeal. It had never sought a "mere arithmetical adding up of all the years." The State acknowledges that some of the assault counts would surely have had to merge. In the prosecutor's view, the answer to the problem lies somewhere in between the perimeter positions. The prosecutor sought a thirty-year maximum

exposure, based on a ten-year sentence for the attempted murder charge and a twenty-year sentence for armed robbery, a crime of the first degree. We agree that the most reasonable understanding of the statute is that in cases involving multiple offenses, an NGI defendant may remain under *Krol* commitment for the maximum ordinary aggregate terms that defendant would have received if convicted of the offenses charged, taking into account the usual principles of sentencing.

Merger principles (which are in part constitutionally based) will often require that one offense merge into another. *See State v. Dillihay,* 127 *N.J.* 42, 46–47, 601 *A.*2d 1149 (1992) (merging drug offenses despite contrary legislative direction). Principles of consecutive versus concurrent sentencing will often warrant that sentences be made concurrent, or be otherwise fashioned to reflect principled sentencing determinations. *State v. Yarbough,* 100 *N.J.* 627, 630, 498 *A.*2d 1239 (1985). In this case, for example, we would not say that the robbery would necessarily merge with the attempted murder or aggravated assault. *See State v. Truglia,* 97 *N.J.* 513, 520–521, 480 *A.*2d 912 (1984) (holding that under "flexible approach" to merger questions, convictions for aggravated assault and possession of handgun with purpose of unlawful use against another do not merge.)

In sum, following an NGI acquittal pursuant to AOC Directive # 9–96, a trial court should determine the probable maximum ordinary aggregate terms that defendant would have received if convicted of the offenses charged, taking into account usual principles of sentencing. For the transitional cases in which sentencing occurred before AOC Directive # 9–96 became effective, a similar application of sentencing guidelines is required. In most cases the *Krol* court will be able to determine what that appropriate sentence is. In some cases it may be necessary to remand to the sentencing court.

In this case, because the trial record is sketchy, and is inadequate to resolve the merger and concurrence issues, we remand the matter to the *Krol* court for the sentencing analysis. We do

not expect mini-trials. The prosecutor has informed us that in most cases a "common-sense approach" prevails at *Krol* hearings. A review of the record will usually reveal the relationship of the offenses, and often there is no disagreement about what the maximum aggregate period of *Krol* confinement should be. In rare cases, an expanded review may be required to make the sentencing decision.

As modified, the judgment of the Appellate Division is affirmed.

*For modification and affirmance*—Chief Justice PORITZ and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.