818 A.2d 368 (2002)
359 N.J. Super. 28
In Matter of the Commitment of D.S., a Krol committee.
Superior Court of New Jersey, Law Division, Criminal Part, Camden County.
Decided December 13, 2002.
Donna M. Spinosi, Assistant Prosecutor, for plaintiff (Vincent P. Sarubbi, Camden County Prosecutor).
*369 Stanley Shur, Assistant Deputy Public Defender, for D.S.
COOK, J.S.C.

OPINION AND ORDER CONTINUING KROL STATUS
D.S. is presently before the Court for another in a series of periodic review hearings, pursuant to State v. Krol, 68 N.J. 236, 344 A.2d 289 (1975). The issues include one of first impression: should the aggravating and mitigating factors in N.J.S.A. 2C:44-1a. and b., as well as the presumptive prison sentence provisions of N.J.S.A. 2C:44-1f., be considered in determining the maximum period that a person acquitted of a crime by reason of insanity may remain committed on Krol status? For the reasons recited below, the answer should be no. The background follows.
D.S. was charged in I-1244-5-84 with first degree armed robbery at a 7-11 store on March 21, 1984. Armed with a machete, he demanded money from the store clerk who complied. He was arrested and jailed that day. A bench trial was conducted, and on April 1, 1985, D.S. was acquitted by reason of insanity. A psychiatric examination of D.S. was ordered, in accordance with N.J.S.A. 2C:4-8a (Commitment of a Person by Reason of Insanity). He was diagnosed as suffering from Schizophrenic Disorder, Bipolar type (manic-depressive). On May 13, 1985, Judge Rossetti found that D.S. could not be released without supervision or conditions without posing a danger to the community or himself, and ordered D.S. committed to the mental health facility at Ancora, in accordance with N.J.S.A. 2C:4-8b.(3). Persons such as D.S., who have been acquitted by reason of insanity, and are found to be a danger to themselves or to others and in need of medical treatment, are described as being on Krol status, or as Krol committees. In re Commitment of W.K., 159 N.J. 1,2, 731 A.2d 482 (1999); citing Krol, supra, as establishing the standard for such commitments.
D.S. was confined from his arrest on March 21, 1984, until he was committed to Ancora Psychiatric Hospital on May 31, 1985. He was discharged from Ancora in early 1999, and remains on Krol status. The conditions currently include medication and treatment for his mental illness and chemical addiction at the University of Medicine and Dentistry of New Jersey (UMDNJ) Mental Illness and Chemical Addiction treatment program, known as the MICA Club.
The issues raised on this Krol review hearing are: (1) the maximum term for which D.S., a person found not guilty by reason of insanity, may remain committed under Krol status; and (2) whether D.S. should now be discharged from Krol status.
Through counsel, D.S., asserts that his maximum Krol term has expired, citing N.J.S.A. 2C:4-8b(3), as interpreted and explained in W.K., supra. N.J.S.A. 2C:4-8b. (3) provides in pertinent part that:
...the defendant's continued confinement, under the law governing civil commitment, shall be established by a preponderance of the evidence, during the maximum period of imprisonment that could have been imposed, as an ordinary term of imprisonment, for any charge on which the defendant has been acquitted by reason of insanity. Expiration of that maximum period of imprisonment shall be calculated by crediting the defendant with any time spent in confinement for the charges or charges for which the defendant has been acquitted by reason of insanity (emphasis added).
*370 The Comment to paragraph b(3) notes that as to the language, "...the maximum period of imprisonment that could have been imposed, as an ordinary term of imprisonment," the Supreme Court held in W.K. that where multiple offenses are involved, a "not guilty by reason of insanity" defendant may remain under Krol status for the total of the maximums of all charges that do not merge that defendant would have received if convicted of the offenses charged, taking into account the usual principles of sentencing. Cannel, Criminal Code Annotated, Comment N.J.S. 2C:4-8b.(3), (Gann 2002 ed.), citing Krol, 159 N.J. at 6, 731 A.2d 482.
Regarding the maximum period for a Krol commitment, counsel for D.S. points to the language in W.K. directing the trial court to "... determine the probable maximum ordinary aggregate terms that defendant would have received if convicted of the offenses charged, taking into account usual principles of sentencing." 159 N.J. at 6, 731 A.2d 482. Seizing on the words "probable" and "usual principles of sentencing," counsel argues that the trial court is required to consider the aggravating and mitigating factors in N.J.S.A. 2C:44-1, and also consider that the presumptive term for first degree robbery is fifteen years. Counsel for D.S. proceeds to assert that the only aggravating factor is (9), the need for deterrence; while mitigating factors (2), (4), (7), (8), and (9) apply, since D.S. had no prior record; his character and attitude indicate unlikely recidivism; and because of his mental illness, his conduct was the result of circumstances unlikely to recur, he didn't contemplate that his conduct would cause or threaten serious harm, and there were substantial grounds tending to excuse his conduct. But even if the presumptive term of imprisonment and the weighing of aggravating and mitigating factors were considered part of the "usual principles of sentencing" referred to in W.K. (a conclusion that, as discussed below, is unsupported by W.K.), findings of aggravating or mitigating factors based on a Krol committee's mental status at the time of the underlying offense would be inappropriate in NGI cases. To so construe N.J.S.A. 2C:4-8b.(3) and the W.K. opinion could result in the utilization of the mental Illness of an NGI defendant to support mitigating factors and negate aggravating factors so as to substantially reduce the maximum committed term, even to a number of years below the presumptive term, and thus limit the Krol status term to a period significantly less than the maximum term of imprisonment for the charged offense.
Counsel for D.S. further asserts that the language of W.K. regarding the utilization of "the usual principles of sentencing," requires application of the statutory presumptive term for an offense15 years for first degree robberywhere the state of the aggravating and mitigating factors do not justify an upward adjustment of the presumptive term. If that were so, then the maximum Krol term for D.S. would be 15 years, the presumptive term for first degree armed robbery, since the record in this case would not warrant imposition of a term beyond the 15 year presumptive term, had D.S. not been acquitted by reason of insanity and instead been convicted. He had no prior record. No other aggravating factors would apply, since this would impermissibly involve the double-counting of factors that are inherent elements of the offense of armed robbery itself. Thus, if the presumptive term were considered, D.S.'s maximum Krol term would have expired in March, 1999, 15 years from the date of his jailing on the armed robbery charge in March, 1984.
However, the proper analysis of N.J.S.A. 2C:4-8b.(3) and W.K. compels the *371 conclusion that the maximum Krol term is to be based on the maximum term for the offense that was charged, in this case 20 years, and not through consideration of aggravating and mitigating factors, nor the presumptive term of imprisonment for the armed robbery charge. The statute clearly prescribes the maximum Krol term as being, "... the maximum period of imprisonment that could have been imposed, as an ordinary term of imprisonment, for any charge on which the defendant has been acquitted by reason of insanity." N.J.S.A. 2C:4-8b.(3) (emphasis added). The "ordinary term of imprisonment" for armed robbery, a first degree offense, is between 10 and 20 years. N.J.S.A. 2C:43-6 a.(1). Such "ordinary term" is different than the "extended term" of 20 years to life imprisonment that may be imposed under N.J.S.A. 2C:43-7a.(2) for armed robbery. In accordance with N.J.S.A. 2C:4-8b.(3), the "maximum period of imprisonment that could have been imposed, as an ordinary term of imprisonment," for the first degree armed robbery offense D.S. was acquitted of by reason of insanity is 20 years, that being the maximum period within the ordinary term for a crime of the first degree. Thus, the statute as applied in this case fixes the maximum Krol term at 20 years.
W.K. did not change the statutory formula for determining the maximum Krol term. As the Supreme Court said in W.K.:
AOC Directive # 9-96... instructs trial court judges that "In Krol cases where commitment is ordered, the maximum sentence that could have been imposed for any charge on which the defendant has been acquitted by reason of insanity should be set forth by the judge in the [sentencing] judgment. N.J.S.A. 2C:4-8b(3). Additionally, counsel should be heard with respect to the possible merger or other appropriate disposition of the remaining charges.
...
We agree that the most reasonable understanding of the statute is that in cases involving multiple offenses, an NGI defendant may remain under Krol commitment for the maximum ordinary aggregate terms that defendant would have received if convicted of the offenses charged, taking into account the usual principles of sentencing.
...
In sum, following an NGI acquittal pursuant to AOC Directive # 9-96, a trial court should determine the probable maximum ordinary aggregate terms that defendant would have received if convicted of the offenses charged, taking into account usual principles of sentencing. For the transitional cases in which sentencing occurred before AOC Directive # 9-96 became effective, a similar application of sentencing guidelines is required...."
[159 N.J. at 5-6, 731 A.2d 482]
Read in conjunction with N.J.S.A. 2C:4-8b.(3), and the AOC directive, the reference by the Supreme Court in W.K. to "the usual principles of sentencing," is limited to a consideration of merger principles and principles of consecutive versus concurrent sentences in multi-charge cases, which the Court discussed immediately following its "usual principles of sentencing" language. No reference is made in W.K. or the Directive to the "presumptive term," or to aggravating and mitigating factors. Rather, the W.K. opinion, the Directive and the statute refer to the maximum sentence that could have been imposed. Again, in this case, the maximum sentence would be 20 years, the maximum sentence for first degree robbery. Accordingly, the maximum Krol status term for D.S. is 20 years. That term will expire *372 on March 18, 2004, approximately 15 months hence.
The remaining issue is whether D.S. should be discharged from Krol status now. [After taking testimony and reviewing the medical reports, and applying the guidelines of State v. Fields, 77 N.J. 282, 299-303, 390 A.2d 574 (1978), the court concluded that the present level of restraints upon D.S.'s liberty are at once minimal, yet both rehabilitative of D.S. and protective of him and society, and that D.S. should remain on Krol status, pending a review hearing in November, 2003].
[The factual findings are omitted from the published edition of the opinion as not qualifying for publication under R. 1:36-2(d)].