871 A.2d 707 (2005)
377 N.J. Super. 71
In the Matter of the COMMITMENT OF M.M.
State of New Jersey, Plaintiff-Respondent,
v.
M.M., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 28, 2005.
Decided April 22, 2005.
*708 Yvonne Smith Segars, Public Defender, attorney for appellant (Lon Taylor, Assistant Deputy Public Defender, of counsel and on the brief).
Sean F. Dalton, Prosecutor of Gloucester County, attorney for respondent (Joseph H. Enos, Jr., Assistant Prosecutor, of counsel and on the brief).
Before Judges PETRELLA, PARKER and YANNOTTI.
The opinion of the court was delivered by
PARKER, J.A.D.
M.M. was charged with first degree attempted murder, N.J.S.A. 2C:5-1 and 2C:11-3a(1); second degree aggravated assault, N.J.S.A. 2C:12-1b(1); second degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a; and fourth degree aggravated assault, N.J.S.A. 2C:12-1b(4). She was found not guilty by reason of insanity (NGI) on the attempted murder charge and civilly committed for a period not to exceed twenty years pursuant *709 to N.J.S.A. 2C:4-8b(3). The remaining counts were merged into the attempted murder charge and dismissed.
At the commitment hearing, the trial judge reviewed the expert reports and found that:
[D]ue to the mental disease of schizophrenia [defendant] had a serious defect of reason such that she did not know [that] what she was doing was wrong. And in her mind she was dealing with self-preservation. Unaware that her thoughts about the victim were delusional[,] she proceeded to act as if immediate action was necessary to save herself and her father from the imagined evil coming from the victim. [The victim] had no idea why she shot him, which tells me that there was no antecedent conflict or situation to serve as motivation. On the contrary, [M.M.'s] behavior was entirely derived from her private thoughts which borne little relationship to the external reality of life at home.
In conclusion her condition would be consistent with the standard set forth in the statute 2C:4-1. So, I find ... those reports to be credible and I find that based on them ... the defendant is not guilty by reason of insanity pursuant to 2C:4-7. And again in that finding as far as commitment, the defendant has under gone an examination ... and I do find that the defendant cannot be released without presenting a danger to the community or herself and I commit her to a mental health facility ... for this purpose ... to be treated as a person civilly committed.
At the Krol[1] hearing on May 7, 2004, defendant urged the court to apply the aggravating and mitigating factors, N.J.S.A. 2C:44-1a and b, in determining the length of the commitment. The judge rejected that argument, citing N.J.S.A. 2C:4-8b(3) which states in relevant part:
The defendant's continued commitment, under the law governing civil commitment, shall be established by a preponderance of the evidence, during the maximum period of imprisonment that could have been imposed, as an ordinary term of imprisonment, for any charge on which the defendant has been acquitted by reason of insanity. Expiration of that maximum period of imprisonment shall be calculated by crediting the defendant with any time spent in confinement for the charge or charges on which the defendant has been acquitted by reason of insanity.
[Emphasis added.]
The judge noted that the ordinary term for first degree murder is ten to twenty years with a presumptive term of fifteen years, and reasoned that N.J.S.A. 2C:4-8b(3) provided for defendant's continued commitment during the "maximum period of imprisonment that could have been imposed."
In this appeal, defendant argues:
POINT I
SINCE THE TRIAL COURT REFUSED TO CONSIDER AGGRAVATING AND MITIGATING FACTORS IN DETERMINING THE TERM OF COMMITMENT FOR DEFENDANT, WHO WAS FOUND NOT GUILTY OF ATTEMPTED MURDER BY REASON OF INSANITY, HER 20-YEAR MAXIMUM TERM OF COMMITMENT MUST BE VACATED AND THE MATTER REMANDED FOR APPLICATION OF GENERAL SENTENCING PRINCIPLES PURSUANT TO THE CRIMINAL CODE.
*710 "When a person accused of a crime is acquitted by reason of insanity, the accused may be held in continued confinement if the person is a danger to self or others and is in need of medical treatment." In re Commitment of W.K., 159 N.J. 1, 2, 731 A.2d 482 (1999). A person committed under these circumstances is described as being on Krol status. Krol established the procedures for determining the length of commitment for a person who has been acquitted by reason of insanity. 68 N.J. at 256-64, 344 A.2d 289. "Commitment requires that there be a substantial risk of dangerous conduct within the reasonably foreseeable future. Evaluation of the magnitude of the risk involves consideration both of the likelihood of dangerous conduct and the seriousness of the harm which may ensue if such conduct takes place." Id. at 260, 344 A.2d 289. The Court noted in Krol:
The fact that defendant is presently suffering from some degree of mental illness and that at some point in the past mental illness caused him to commit a criminal act, while certainly sufficient to give probable cause to inquire into whether he is dangerous, does not, in and of itself warrant the inference that he presently poses a significant threat of harm, either to himself or to others.
[Id. at 247, 344 A.2d 289.]
Consequently, the procedure was established whereby defendants committed after an NGI finding are reviewed on a periodic basis under the same standards as those applied to civil commitments generally. Id. at 251, 344 A.2d 289. "After the defendant is committed, periodic review hearings (Krol hearings) are held in a criminal proceeding on notice to the prosecutor to determine if continued involuntary commitment is warranted." W.K., supra, 159 N.J. at 4, 731 A.2d 482.
Generally, the hearing is conducted pursuant to the laws governing civil commitments, except that the burden for establishing the need for continued commitment is by a preponderance of the evidence, whereas in a civil commitment proceeding it is by clear and convincing evidence. The lesser burden of proof continues during the maximum period for which imprisonment could have been imposed as an ordinary term of imprisonment for the charges on which the defendant has been acquitted by reason of insanity, after giving credit for all time spent in confinement for the charges.
[Ibid. (Citations omitted).]
The Court in W.K. held that "a trial court should determine the probable maximum ordinary aggregate terms that defendant would have received if convicted of the offenses charged, taking into account usual principles of sentencing." Id. at 6, 731 A.2d 482. The phrase "usual principles of sentencing" referred to merger and consecutive sentencing in W.K. Defendant argues that under W.K. the "usual principles of sentencing" mandate consideration of the aggravating and mitigating factors to determine the length of the commitment. We disagree.
The continued involuntary commitment of an NGI defendant is based upon the court's determination of whether the State has demonstrated that the defendant continues to be a danger to herself or others. Krol, supra, 68 N.J. at 263 n. 13, 344 A.2d 289. To meet its burden, the State may present expert testimony of psychiatrists, psychologists and others responsible for treatment and evaluation of the defendant. Id. at 261, 344 A.2d 289. Defendant, of course, may present her own expert testimony. Ibid. "The determination of dangerousness .... while requiring the court to make use of the assistance *711 which medical testimony may provide, is ultimately a legal one, not a medical one." Ibid. If the court finds that an NGI defendant is no longer a danger to herself or others, she may be released prior to the maximum term.[2] Alternatively, a Krol status defendant may be committed for longer than the ordinary maximum term if the court finds that she remains a danger to herself or others.[3]Jones v. United States, 463 U.S. 354, 368-70, 103 S.Ct. 3043, 3052-53, 77 L.Ed.2d 694, 708-09 (1983).
The specific issue raised here has been addressed in two trial court opinions with divergent results. In In re Commitment of G.K., 363 N.J.Super. 228, 232-33, 832 A.2d 364 (Law Div.2003), the court determined that under W.K., the "usual principles of sentencing" require consideration of the aggravating and mitigating factors. The court in In re Commitment of D.S., 359 N.J.Super. 28, 32-33, 818 A.2d 368 (Law Div.2002), however, held that the "usual principles of sentencing" are limited to merger and consecutive/concurrent sentencing as discussed in W.K.
In our view, the statutory language directing that "[t]he defendant's continued commitment, under the law governing civil commitment, shall be established by a preponderance of the evidence, during the maximum period of imprisonment that could have been imposed," establishes the measure of the maximum term of commitment. N.J.S.A. 2C:4-8b(3). As we indicated above, a Krol status defendant may be released at a date earlier than the maximum term if the State fails to carry its burden at the periodic Krol hearings. The "usual principles of sentencing" do not include consideration of the aggravating and mitigating factors to determine the term of commitment because N.J.S.A. 2C:4-8b(3) establishes the maximum term of commitment, subject to periodic review.
Affirmed.
NOTES
[1] State v. Krol, 68 N.J. 236, 344 A.2d 289 (1975).
[2] Krol provides that an NGI defendant may be conditionally released if the court finds it appropriate. 68 N.J. at 262, 344 A.2d 289.
[3] After expiration of the ordinary maximum term, however, the State's burden of showing a continuing need for commitment rises to the "clear and convincing" standard from the "preponderance of the evidence" standard for a Krol status defendant. W.K., supra, 159 N.J. at 4, 731 A.2d 482.