# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4120-17T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

C.H.J., Jr.,

     Defendant-Appellant.

_____

Submitted September 23, 2019 – Decided October 15, 2019

Before Judges Sumners and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 06-12-1827.

Joseph E. Krakora, Public Defender, attorney for appellant (Katherine Marie Caola, Assistant Deputy Public Defender, on the brief).

Bradley D. Billhimer, Ocean County Prosecutor, attorney for respondent (Samuel J. Marzarella, Chief Appellate Attorney, of counsel; William Kyle Meighan, Senior Assistant Prosecutor, on the brief).

PER CURIAM

After a bench trial, defendant C.H.J., Jr.[1] was found not guilty by reason of insanity of eight offenses arising from an incident where he resisted arrest and seriously harmed one police officer and attempted to injure two others. He appeals from an order imposing twenty-three years, or until November 13, 2031, as the maximum period he shall remain on Krol[2] supervisory status. After reviewing the record against the applicable legal principles, we affirm in part, vacate in part, and remand for further proceedings.

## I.

The following facts are relevant to our review. On May 19, 2006, two emergency psychiatric workers were attempting to evaluate defendant at his home. Defendant, who was not taking his prescribed medication, refused to speak with the workers and slammed the door on them. Concluding that defendant needed to be transported to the Kimball Medical Center for an evaluation, they contacted the police for assistance.

Officers Richard Mazza, Robert Maccaquano, and Michael Terranova of the Manchester Police Department responded and entered defendant's residence. When they approached defendant, he appeared angry and yelled obscenities at

---

[1] We use initials to preserve defendant's confidentiality. R. 1:38-3(f)(2).

[2] State v. Krol, 68 N.J. 236 (1975).

them.  The officers attempted to engage defendant in the hopes of calming him down but he instead grabbed a bottle and brandished it like a club.

After defendant failed to respond to Mazza's direction to drop the bottle, he pepper-sprayed defendant in the head and facial areas.  The pepper spray did not have the desired effect of incapacitating defendant, however.  Instead, defendant became further enraged, and charged Terranova, who also deployed pepper spray that similarly did not appear to affect defendant.

Defendant then struck Terranova three times with the bottle, the last strike to the head being so violent that the bottle broke.  During the altercation, defendant and Terranova fell to the ground with defendant still holding the broken bottle.  When Mazza attempted to remove the broken bottle from defendant's hand, defendant kicked at Mazza and Maccaquano.  Eventually, Maccaquano, Mazza and Terranova were able to subdue defendant, remove the broken bottle from his hand, and handcuff him.  As a result of the altercation, Terranova sustained a laceration to the back of his head that required eighteen stitches, a deep bone bruise to his elbow, and a concussion.

Defendant was charged in an eight-count indictment with third-degree resisting arrest, contrary to N.J.S.A. 2C:29-2(a) (count one); two counts of third-degree aggravated assault on a police officer for allegedly striking Mazza and

A-4120-17T2

Maccaquano, contrary to N.J.S.A. 2C:12-1(b)(5)(a) (counts two and three); one count of third-degree aggravated assault, contrary to N.J.S.A. 2C:12-1(b)(5)(a) (count four); second-degree aggravated assault, contrary to N.J.S.A. 2C:12-1(b)(1) (count five), and third-degree aggravated assault, contrary to N.J.S.A. 2C:12-1(b)(2) (count six). Counts four through six all relate to defendant's assault of Terranova. Defendant was also charged with third-degree possession of a weapon for an unlawful purpose, contrary to N.J.S.A. 2C:39-4 (count seven), and fourth-degree unlawful possession of weapon, contrary to N.J.S.A. 2C:39-5(d) (count eight).

Defendant contends that he remained in custody until August 5, 2006, accruing seventy-nine days of jail credits. Prior to the bench trial, the State and defendant, through counsel, executed a pretrial memorandum. The memorandum stated that, if convicted, defendant faced a maximum sentence of ten years, with an 85% period of parole ineligibility pursuant to the No Early Release Act. In addition, the memorandum contained the State's plea offer that if defendant pleaded guilty to the second-degree aggravated assault charge, it would recommend a seven-year period of imprisonment, subject to an 85% period of parole ineligibility pursuant to the No Early Release Act. Finally, the

memorandum acknowledged that the parties agreed to a bench trial and defendant had plead not guilty by reason of insanity.

At the conclusion of the bench trial, and after considering the testimony of a defense expert, the court determined that defendant committed all of the offenses alleged in the indictment, but found defendant not guilty by reason of insanity. In a conforming November 13, 2008 order memorializing that verdict, the court also placed defendant into custody, subject to an evaluation at Ann Klein Forensic Center. It does not appear from the record, however, that the court addressed the maximum period of Krol supervision at the time it entered the November 13, 2008 order. Nor does the record contain any subsequent court orders indicating if defendant was committed to a mental health facility, or conditionally released.

According to defendant, nearly ten years later, at an April 11, 2017 Krol review hearing, "it was discussed that [defendant's] maximum supervisory period was never set." The parties submitted written positions regarding the appropriate maximum supervisory period and in an August 8, 2017 order, the court established defendant's maximum supervisory term at twenty-three years, which would expire on November 13, 2031.

A-4120-17T2

In a written opinion that accompanied the court's August 8, 2017 order, the court relied on N.J.S.A. 2C:4-8(b)(3), and identified the maximum sentences for all of the offenses for which defendant was found not guilty by reason of insanity. The court then merged counts four and six into count five, because those charges "substantively encompass[ed] the same offense," and count eight into count seven, "as a lesser included offense." Accordingly, after merger, the court concluded that the "maximum period of imprisonment that could have been imposed, as an ordinary term of imprisonment," see N.J.S.A. 2C:4-8(b)(3), for the remaining merged counts one, two, three, five and seven, totaled twenty-three years.

Defendant moved for reconsideration. After hearing oral arguments, the court issued a May 15, 2018 order and accompanying written opinion that denied defendant's motion and confirmed the court's August 8, 2017 order, thereby maintaining defendant's maximum period of Krol review until November 13, 2031.

In reaching its conclusion, the court also addressed the appropriate maximum supervisory term under N.J.S.A. 2C:4-8(b)(2), and noted that a court "may choose to use the maximum or minimum sentence term for the crime, or whatever other time frame it finds appropriate after balancing the individual's

liberty interests against both the individual and the public safety interests."  In exercising his discretion, the judge stated that he "considered the offenses in which [defendant] was found not guilty by reason of insanity, as well as his history of non-compliance as emphasized by the State" and applied the maximum term for each offense, after merger.

The judge also rejected defendant's request that the court apply concurrent, as opposed to consecutive, terms when computing defendant's maximum supervisory term.  The court, after citing the factors in State v. Yarbough, 100 N.J. 627 (1985), and relying on our decision in State v. Russo, 243 N.J. Super. 383 (App. Div. 1990), concluded that applying consecutive sentences was appropriate because despite the fact that defendant's conduct involved a single period of aberrant behavior, defendant's "conduct involved multiple police office[r] victims and separate acts of aggravated assault and weapons offenses."

Finally, the court rejected defendant's argument that his maximum supervisory period should be limited to ten years, consistent with the ten-year sentence provided in the pretrial memorandum.  The court concluded that even though the pretrial memorandum "was prepared for the purposes of a[] [not guilty by reason of insanity trial], nothing in the [pretrial] [m]emorandum

7

indicates that [the trial judge], or the parties, intended the [m]aximum [s]entence if [c]onvicted time period of ten years to establish [defendant's] [m]aximum [s]upervisory [t]erm under <u>Krol</u>."

On appeal, defendant raises the following points for our consideration:

POINT I

THE PRETRIAL MEMORANDUM DEMONSTRATES THE TRIAL COURT'S INTENTION TO APPLY ORDINARY PRINCIPLES OF SENTENCING.

POINT II

ORDINARY PRINCIPLES OF SENTENCING REQUIRES THE IMPOSITION OF A TEN [-] YEAR MAXIMUM PERIOD OF <u>KROL</u> SUPERVISION.

A.    Merger Must Occur As a Matter of Law.

B.    N.J.S.A.    2C:44-5    Requires Imposition of Concurrent Sentences.

C.    [Rule] 3:21-8 Requires All Available Jail Credits Be Applied.

In his first point, defendant concedes the applicability of N.J.S.A. 2C:4-8(b)(3) and states that "[i]t is understood that <u>Krol</u> supervision is the maximum ordinary aggregate term the defendant would have received if convicted of the offenses charged, taking into account usual principles of sentencing."   He

maintains, however, that because the court did not establish the maximum supervisory period at sentencing as required by N.J.S.A. 2C:4-8, that the "best remedy is to set a maximum period of supervision within the terms of the pretrial memorandum," which would support a ten-year maximum supervisory period.

Alternatively, in his second point defendant argues that ordinary principles of sentencing support a ten-year maximum supervisory period. Specifically, he maintains that the court improperly applied merger principles and incorrectly determined that the merged offenses should run consecutively.

We disagree with defendant's arguments that the court was bound by the pretrial memorandum in establishing the maximum supervisory term and that the court incorrectly merged the offenses when computing the potential maximum supervisory period of twenty-three years. We cannot conclude on the current record, however, if the court properly exercised its discretion when determining that the merged charges should run consecutively, because the court did not make the necessary findings as to each separate offense.

## II.

"An acquittal on grounds of insanity, unlike a simple acquittal, does not automatically free . . . the criminal defendant." State v. Krol, 68 N.J. 236, 243

(1975).  Rather, after a defendant is acquitted by reason of insanity, the court may dispose of the defendant in three ways:

> (1) If the court finds that the defendant may be released without danger to the community or himself without supervision, the court shall so release the defendant; or
>
> (2) If the court finds that the defendant may be released without danger to the community or to himself under supervision or under conditions, the court shall so order; or
>
> (3) If the court finds that the defendant cannot be released with or without supervision or conditions without posing a danger to the community or to himself, it shall commit the defendant to a mental health facility approved for this purpose by the Commissioner of Human Services to be treated as a person civilly committed.  In all proceedings conducted pursuant to this section and pursuant to section [N.J.S.A.] 2C:4-6 concerning a defendant who lacks the fitness to proceed, including any periodic review proceeding, the prosecuting attorney shall have the right to appear and be heard.  The defendant's continued commitment, under the law governing civil commitment, shall be established by a preponderance of the evidence, during the maximum period of imprisonment that could have been imposed, as an ordinary term of imprisonment, for any charge on which the defendant has been acquitted by reason of insanity.  Expiration of that maximum period of imprisonment shall be calculated by crediting the defendant with any time spent in confinement for the charge or charges on which the defendant has been acquitted by reason of insanity.
>
> [N.J.S.A. 2C:4-8(b).]

In the typical criminal sentencing setting, when reviewing a trial court's sentencing decision, we afford great deference to a sentencing judge's decision. State v. Bieniek, 200 N.J. 601, 608–09 (2010). "The role of appellate courts in reviewing sentences is to determine: (1) whether the exercise of discretion by the sentencing court was based upon findings of fact grounded in competent, reasonably credible evidence; (2) whether the sentencing court applied the correct legal principles in exercising its discretion; and (3) whether the application of the facts to the law was such a clear error of judgement that it shocks the conscience." State v. Megargel, 143 N.J. 484, 493 (1996) (citing State v. Roth, 95 N.J. 334, 363-65 (1984)). We are also "bound to affirm a sentence, even if [we] would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." State v. O'Donnell, 117 N.J. 210, 215 (1989) (citing State v. Jarbath, 114 N.J. 393, 400–01 (1989)).

In sentencing a defendant found not guilty by reason of insanity, however, "a trial court should determine the probable maximum ordinary aggregate terms that defendant would have received if convicted of the offenses charged, taking into account usual principles of sentencing." In re Commitment of W.K., 159

11

N.J. 1, 6 (1999). "The 'usual principles of sentencing' do not include consideration of the aggravating and mitigating factors in establishing the term of commitment because N.J.S.A. 2C:4-8(b)(3) establishes the maximum term, subject to periodic review." In re Commitment of M.M., 377 N.J. Super. 71, 78 (App. Div. 2005). Accordingly, while the trial court has discretion to decide a defendant's maximum supervisory date, its decision must be based on usual principles of sentencing, limited to a consideration of concurrent and consecutive sentencing criteria. Ibid.

We reject defendant's reliance on the pretrial memorandum as dispositive on the issue of defendant's maximum supervisory term. First, the ten-year maximum term noted in the pretrial memorandum merely referred to the possible maximum period of incarceration defendant faced if he was convicted, and was provided in the context of plea negotiations. Second, and in that regard, the pretrial memorandum merely memorialized the final plea offer, which was rejected by defendant. See R. 3:9-3(g). No provision of the pretrial memorandum provided that if defendant was found not guilty by reason of insanity, his maximum supervisory term would mirror the plea offer. Rather, in such circumstances, the maximum supervisory period is governed by N.J.S.A. 2C:4-8, which considers defendant's interests and any danger defendant's

A-4120-17T2

release, with or without conditions, poses to the community. It would be inimical to that statutory regime, and to public safety, to condition any release from a supervisory term based solely on an agreement between the parties.

We also reject defendant's claim that the court erred when merging the indictable offenses. "Merger stems from the well-settled principle that 'an accused [who] has committed only one offense . . . cannot be punished as if for two.'" State v. Cole, 120 N.J. 321, 325–26 (1990) (quoting State v. Miller, 108 N.J. 112, 116 (1987)). Sentencing judges should take a flexible approach to the merger of offenses. State v. Davis, 68 N.J. 69, 81 (1975). Further, N.J.S.A. 2C:1–8 provides for merger of offenses to avoid impermissible multiple convictions for the same conduct and sets forth a series of factors to guide a court in determining whether to bar multiple convictions for conduct that constitutes more than one offense. In particular, N.J.S.A. 2C:1–8(d) calls for merger when one offense is established by proof of the same or less than all the facts required to establish the commission of another offense charged. See State v. Mirault, 92 N.J. 492, 502–03 (1983); see also State v. Davis, 68 N.J. at 81.

Here, the court merged counts four and six into count five, because those charges "substantively encompass[ed] the same offense," and count eight into count seven, "as a lesser included offense." Accordingly, after merger, the court

concluded that "maximum period of imprisonment that could have been imposed, as an ordinary term of imprisonment," N.J.S.A. 2C:4-8(b)(3),[3] for counts one, two, three, five and seven, totaled twenty-three years. We discern no error from these determinations.

Defendant challenges the court's merger determination by claiming that counts two and three are not supported by the sentencing court's findings. We disagree. The sentencing court determined that the State established all elements of the crimes beyond a reasonable doubt. As to counts two and three, the court specifically found in its November 13, 2008 oral decision that during the incident, defendant was kicking his legs at Mazza and Maccaquano, which fully supports the court's legal conclusions memorialized in the November 13, 2008 order related to counts two and three, which were amended from third-degree to fourth-degree offenses. See N.J.S.A. 2C:12-1(b)(5).

### III.

As noted, after concluding that the maximum sentence should apply for each offense and applying merging principles, the court also determined that the

---

[3] We note that in the May 15, 2018 written opinion and order, the court also considered the propriety of applying maximum terms for each offense under N.J.S.A. 2C:4-8(b)(2). Defendant has not challenged those findings on appeal and we conclude in any event that the court did not abuse its discretion as its legal conclusions were supported by the record.

sentences should run consecutively, as opposed to concurrently. The court's factual findings, however, did not address the propriety of applying consecutive sentences to each separate offense, and specifically the resisting arrest charge and merged weapons offenses. Accordingly, we vacate the court's August 8, 2017 and May 15, 2018 orders, and remand for additional factual findings.

"When multiple sentences of imprisonment are imposed on a defendant for more than one offense, . . . such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence . . . ." N.J.S.A. 2C:44-5. In determining whether sentences for multiple offenses should run concurrently or consecutively, the trial court applies these criteria:

> (1) there can be no free crimes in a system for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a consecutive or concurrent sentence should be separately stated in the sentencing decision;
>
> (3) some reasons to be considered by the sentencing court should include facts relating to the crimes, including whether or not:
>
> > (a) the crimes and their objectives were predominantly independent of each other;
> >
> > (b) the crimes involved separate acts of violence or threats of violence;

(c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense; and

(6) there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses.

[State v. Yarbough, 100 N.J. 627, 643-44, (1985)]

A sentencing court applies these factors qualitatively, not quantitatively. State v. Carey, 168 N.J. 413, 427 (2001). Thus, a court may impose consecutive sentences "even though a majority of the Yarbough factors support concurrent sentences." Id. at 427–28; see, e.g., State v. Molina, 168 N.J. 436, 442 (2001) (finding consecutive sentences were warranted despite the presence of only one Yarbough factor). Concurrent sentences are not mandated even where the

16

crimes are connected by a "'unity of specific purpose[,]' . . . were somewhat interdependent of one another, and were committed within a short period of time of one another." State v. Swint, 328 N.J. Super. 236, 264 (App. Div. 2000).

We acknowledge that "trial judges have discretion to decide if sentences should run concurrently or consecutively," and "[w]hen a sentencing court properly evaluates the Yarbough factors in light of the record, the court's decision will not normally be disturbed on appeal." State v. Miller, 205 N.J. 109, 128-29 (2011). However, "[w]hen trial courts impose 'either a concurrent or consecutive sentence, '[t]he focus should be on the fairness of the overall sentence,' and [the trial courts] should articulate their reasons for their decisions with specific reference to the Yarbough factors." State v. Soto, 385 N.J. Super. 247, 256 (App. Div. 2006) (quoting State v. Abdullah, 184 N.J. 497, 515 (2005)). "'[A] statement of reasons is a necessary prerequisite for adequate appellate review of sentencing decisions . . . [in order to] determine whether the trial court's imposition of consecutive sentences was a valid exercise of discretion.'" Ibid. (quoting State v. Miller, 108 N.J. at 122). "Failure to provide reasons for the imposition of a consecutive sentence may compel a remand for resentencing." Ibid. (citing Miller, 108 N.J. at 122).

Here, in imposing consecutive sentences, the court acknowledged that "defendant's offenses were committed so closely in time and place as to indicate a single period of aberrant behavior," but that because defendant's "conduct involved multiple police officer victims and separate acts of aggravated assault and weapons offenses," consecutive sentences were appropriate. The court did not, however, specifically address the propriety of applying consecutive sentences to the resisting arrest charge in count one, or the merged weapons offenses, and we cannot discern from the record or the court's findings the basis to impose consecutive sentences on those charges in light of the fact that the underlying conduct giving rise to those offenses does not appear independent from the aggravated assault charges to which defendant received three consecutive sentences toward his maximum supervisory term. On remand, the court shall reconsider its decision to apply consecutive sentencing to the resisting arrest and weapons offenses, and to the extent the court concludes consecutive sentences are appropriate, it must consider and weigh the Yarbough factors.

IV.

Finally, both the State and defendant agree that defendant is entitled to credits for those periods when he was incarcerated or institutionalized, thereby

reducing his maximum supervisory period. See N.J.S.A. 2C:4-8(b)(3); R. 3:21-8. According to defendant, he was taken into custody and later involuntarily committed during which time he accrued seventy-nine days of credits toward his Krol maximum period of supervision. As the record is incomplete as to the period of defendant's incarceration or institutionalization, the court on remand shall conduct further proceedings, as necessary, sufficient to address and establish the appropriate credits to be applied against defendant's maximum supervisory period.

After carefully reviewing the record and the briefs, we conclude that defendant's remaining arguments are "without sufficient merit to warrant discussion in a written opinion." R. 2:11-3(e)(2).

Affirmed in part, vacated in part and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4120-17T2