**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3752-14T2

STATE OF NEW JERSEY,

       Plaintiff-Respondent,

v.

ERIK BEHEN, a/k/a
ERIK P. BEHEN,

       Defendant-Appellant.

_____

Submitted February 27, 2017 — Decided March 10, 2017

Before Judges Haas and Currier.

On appeal from Superior Court of New Jersey,
Law Division, Middlesex County, Indictment No.
12-12-1751.

Joseph E. Krakora, Public Defender, attorney
for appellant (John Douard, Assistant Deputy
Public Defender, of counsel and on the brief).

Christopher S. Porrino, Attorney General,
attorney for respondent (Lila B. Leonard,
Deputy Attorney General, and Steven A. Yomtov,
Deputy Attorney General, of counsel and on the
brief).

PER CURIAM

After the trial judge denied his motion to suppress evidence, defendant Erik Behen pled guilty to fourth-degree possession of an imitation firearm, N.J.S.A. 2C:39-4(e), and fourth-degree unlawful possession of a knife, N.J.S.A. 2C:39-5(d). In accordance with the negotiated plea, the judge sentenced defendant to two years of probation on each charge, to run concurrently with each other. The judge also assessed appropriate fines and penalties.

On appeal, defendant raises the following contentions:

POINT I

THE PHYSICAL EVIDENCE MUST BE SUPPRESSED BECAUSE THE POLICE HAD NO CONSTITUTIONALLY VALID REASON TO STOP AND DETAIN THE CAR OR SEIZE ANYTHING FOUND ON [DEFENDANT'S] PERSON OR INSIDE THE CAR.

A. Even If [The Police Officer] Was Justified In Stopping [Defendant's] Car When It Went The Wrong Way On A One-Way Street, He Did Not Have Reasonable, Articulable Suspicion To Remove [Defendant] From The Car.

B. The Seizure Of Items In The Car Was Not Appropriate Under The "Plain View" Doctrine.

POINT II

DEFENDANT'S RIGHT TO A FAIR TRIAL WAS IMPAIRED BY THE POLICE OFFICERS' FAILURE TO PRESERVE THE AUDIO AND VIDEO RECORDING OF THE EVENTS THAT OCCURRED OUTSIDE THE CAR AFTER THE STOP, WHICH COULD HAVE IMPEACHED THE POLICE ACCOUNT OF EVENTS AND LED TO EXCULPATORY INFORMATION.

After reviewing the record in light of the contentions advanced on appeal, we affirm.

I.

We derive the following facts from the evidentiary hearing conducted by the trial judge. At approximately 3:45 a.m. on a hot August night in 2012, Officer Michael Schwarz[1] was patrolling a neighborhood in a marked police car. At that time, a dispatcher called Officer Schwarz and told him that a resident had seen a man in his yard who was wearing a jacket and a ski mask. The officer responded to the area, but the dispatcher called again to report that the masked man had left the yard and was no longer in sight. Officer Schwarz began driving around the area in search of the suspect.

A few minutes later, Officer Schwarz saw a car driving toward him. When the car was approximately 200 to 300 yards away, its driver stopped, backed the car up, and turned down a side street. Based upon the driver's actions, Officer Schwarz suspected that the driver had seen his patrol car. Therefore, the officer followed the other car down the side street.

The driver of the other car then made another turn and started driving the wrong way on a one-way street in violation of N.J.S.A.

---

[1] Officer Schwarz was the only witness at the suppression hearing.

39:4-85.1. Based upon this traffic violation that occurred in his presence, Officer Schwarz effectuated a motor vehicle stop of the vehicle. Officer Schwarz reported to the dispatcher that he had stopped the car and that there were two occupants in it.

Officer Schwarz testified that he walked up to the car and found the driver, who was later identified as defendant, wearing "an Army type heavy jacket" even though it was "very hot and humid." There was a woman sitting in the front passenger seat. The officer asked them some questions about where they were coming from and where they were heading. As he spoke to the couple, Officer Schwarz saw what appeared to be a rolled-up knit hat or a ski mask on the front seat, beside the center console.

When defendant and the woman could not explain why they were in the area, Officer Schwarz asked defendant to exit the car so he could speak to him. As defendant got out of the car, Officer Schwarz saw that defendant was carrying two knives in "a double sheath" he was wearing on the right side of his belt. Officer Schwarz then grabbed defendant, put him on the hood of the car, and handcuffed him.

By this time, at least one back-up officer had arrived at the scene. Officer Schwarz then received a radio report from another officer who was speaking to the victim who had earlier called dispatch. The victim described the suspect as a large male, who

4

was approximately six-feet, two-to-three inches tall. Officer Schwarz saw that defendant matched this description. In addition, the victim reported that someone had broken into his vehicle and taken a Coach purse, a matching wallet, and a red compact disc ("CD") case.

Officer Schwarz then asked the female passenger to exit the car in order to check her for weapons. After the passenger got out of the car, the officer saw a purse and a red CD case on the floor of the front passenger seat. Officer Schwarz then reached into the car and removed the hat, the purse, and the CD case. When the officer unrolled the hat, he saw that it was a ski mask.

Officer Schwarz then used a flashlight to look into the car. The officer observed that part of the back seat was pushed down, which created an opening into the trunk space of the car. The officer next saw what appeared to be the barrel of a rifle protruding half-way from the trunk into the backseat. After seeing the weapon, Officer Schwarz entered defendant's car and removed it. When he did so, the officer learned that the weapon was a loaded Daisy air rifle BB gun. The police then impounded defendant's car.[2]

_____

[2] Defendant and the passenger were later charged in a seven-count indictment with second-degree conspiracy to commit burglary, N.J.S.A. 2C:5-2 (count one); second-degree burglary, N.J.S.A.

At the conclusion of the hearing, the trial judge denied defendant's motion to suppress the items Officer Schwarz seized from defendant and his car. In a thorough oral opinion, the judge found that the officer had a reasonable basis for stopping defendant's car after he saw defendant driving the wrong way on a one-way street. When he began speaking to defendant, the officer saw that he was wearing a heavy coat that was "inconsistent with the weather[,]" but entirely consistent with the victim's report that the masked man in his yard had been wearing a jacket. Officer Schwarz also saw what appeared to be a rolled-up ski mask in plain view near the front console. Based upon this information, the judge found that the officer properly asked defendant to get out of the car.

When defendant exited the car, the officer immediately saw that he was carrying two knives in a double sheath attached to his belt. Thus, the judge concluded that the seizure of the knives was proper. When the passenger left the car at the officer's request, he saw a purse and a red CD case similar to what the

2C:18-2 (count two); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count three); fourth-degree possession of a knife for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count four); fourth-degree unlawful possession of a knife, N.J.S.A. 2C:39-5(d) (count five); third-degree theft, N.J.S.A. 2C:20-3(a) (count six); and third-degree receipt of stolen property, N.J.S.A. 2C:20-7 (count seven).

victim reported as having been stolen in plain view on the floor of the front passenger seat. Therefore, the judge found that the seizure of these items was also proper.

Finally, Officer Schwarz used a flashlight to look into the back seat of the car and saw the air rifle in plain view sticking out from the trunk into the back seat of the car. Accordingly, the judge concluded that the seizure of this weapon was also permissible.[3]

## II.

In Point I of his brief, defendant argues that the trial judge erred by denying his motion to suppress the evidence seized from his person and from his car. We disagree.

Our review of a trial judge's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). In reviewing a motion to suppress evidence, we must uphold the judge's factual findings, "so long as those findings are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (quoting Robinson, supra, 200 N.J. at 15).

---

[3] As noted above, defendant then pled guilty to unlawful possession of an imitation firearm, as a lesser-included offense to count three of the indictment, and to fourth-degree unlawful possession of a knife under count five. Pursuant to the plea agreement, the trial judge dismissed the remaining charges against defendant. Defendant's plea agreement also provided that all of the charges against the passenger would be dismissed.

Additionally, we defer to a trial judge's findings that are "substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Ibid. (alteration in original) (quoting Robinson, supra, 200 N.J. at 15). We do not, however, defer to a trial judge's legal conclusions, which we review de novo. Ibid.

The police may, without a warrant, temporarily detain a person if they have a reasonable and articulable suspicion that the person is engaged in unlawful activity. State v. Elders, 192 N.J. 224, 247 (2007). Similarly, the police may stop a motor vehicle based on a "reasonable and articulable suspicion that an offense, including a minor traffic offense, has been or is being committed." State v. Amelio, 197 N.J. 207, 211 (2008), cert. denied, 556 U.S. 1237, 129 S. Ct. 2402, 173 L. Ed. 2d 1297 (2009). The State bears the burden of establishing by a preponderance of the evidence that it possessed sufficient information to give rise to a reasonable and articulable suspicion. Ibid.

Here, Officer Schwarz was investigating a report of a man wearing a jacket and a ski mask at 3:45 a.m. on a hot and humid night in a resident's yard. As he was canvassing the area, the officer saw defendant's car stop, back up, and turn down a side street. Defendant then turned the wrong way down a one-way street.

This obvious traffic violation committed in the officer's presence gave Officer Schwarz a reasonable basis for stopping defendant's car. Ibid.

As he was speaking to defendant and the passenger, Officer Schwarz saw that defendant was wearing a heavy coat and that there was a rolled-up knit hat or ski mask in the front seat. Thus, the officer had a reasonable basis to suspect that defendant was the masked man who was in the resident's yard and, contrary to defendant's contention, the officer was justified in asking defendant to step out of the car to talk to him. State v. Bacome, ___ N.J. ___ (2017) (slip op. at 12) (noting that the United States Supreme Court has held since 1977 that it is "objectively reasonable for officers to order a driver out of a lawfully stopped vehicle, finding removal only a minor intrusion into a driver's personal liberty") (citing Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S. Ct. 330, 333, 54 L. Ed. 2d 331, 337 (1977)); see also State v. Pena-Flores, 198 N.J. 6, 31 n.7 (2009) (describing right of officer to remove driver from lawfully stopped vehicle as "established precedent").

When defendant got out of the car, Officer Schwarz saw that he was carrying two knives in a double sheath hanging from his belt. Because the officer was "lawfully . . . in the area where he observed and seized the" knives, and because it was readily

apparent that the knives were either contraband or possible evidence of a crime, the officer properly seized the weapons under the plain view doctrine. State v. Gonzalez, 227 N.J. 77, 101 (2016).

After seizing the knives from defendant and handcuffing him, Officer Schwarz properly asked the passenger to get out of the car. Clearly, the circumstances "present[ed] reason for heightened caution." Bacome, supra, (slip op. at 17) (reaffirming the principle first established in State v. Smith, 134 N.J. 599, 618-20 (1994) that a police officer making a traffic stop may order a passenger to get out of the car "when the circumstances warrant heightened caution"). By that time, the officer knew that the resident had reported that his car was broken into and that defendant's clothing and physical stature matched the description of the suspect. The passenger's presence in the car just minutes after the resident called the police strongly indicated that she may have also been involved in the offense. In addition, defendant was carrying two knives when he exited the vehicle, which further justified removing the passenger from the car to check her for weapons in order to protect the officer's safety.

After the passenger got out of the car, Officer Schwarz made another plain view observation of a purse and red CD case, which matched the description of the items taken from the victim's car.

Therefore, the seizure of these items, together with the previously observed ski mask, was clearly appropriate. Gonzalez, supra, 227 N.J. at 101.

Finally, Officer Schwarz saw the air rifle by shining a flashlight into the back seat while he was standing from a legal vantage point outside the car. Again, his plain view observation of the rifle, which was obviously contraband, permitted him to seize the weapon. Ibid.

Therefore, we conclude that the trial judge correctly denied defendant's motion to suppress.

### III.

At the suppression hearing, Officer Schwarz answered a number of questions from both the prosecutor and defense counsel concerning whether any recording made by the Mobile Video Recorder (MVR) attached to his patrol car had been preserved. The officer could not recall whether his MVR was working on the night of the incident. The officer stated that when he activated his overhead lights to effectuate the traffic stop of defendant's car, his MVR should have been activated. However, the officer testified that he had not been trained that he had to personally do anything to secure the recording at the end of his shift and he could not explain why the MVR recording was not available.

11

In Point II of his brief, defendant argues for the first time on appeal that "that the trial judge committed prejudicial error in failing to dismiss the indictment since the State failed to preserve evidence which would have allowed . . . defendant to challenge the State's case against him." This contention lacks merit for two reasons.

First, defendant never made a motion to dismiss the indictment. Although under the plain error rule we will consider allegations of <u>error</u> not brought to the trial court's attention that have a clear capacity to produce an unjust result, <u>see</u> <u>Rule</u> 2:10-2; <u>State v. Macon</u>, 57 <u>N.J.</u> 325, 337-39 (1971), we generally decline to consider <u>issues</u> that were not presented at trial. <u>Nieder v. Royal Indem. Ins. Co.</u> 62 <u>N.J.</u> 229, 234 (1973). As the Supreme Court has cogently explained:

> Appellate review is not limitless. The jurisdiction of appellate courts rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves. Although "[o]ur rules do not perpetuate mere ritual[,]" . . . a litigant "must make known his position to the end that the trial court may consciously rule upon it." <u>State v. Abbott</u>, 36 <u>N.J.</u> 63, 76 (1961). This is so because "[t]he important fact is that the trial court was alerted to the basic problem[.]" <u>Id.</u> at 68. In short, the points of divergence developed in the proceedings before a trial court define the metes and bounds of appellate review.

12

> [State v. Robinson, 200 N.J. 1, 19 (2009); See also State v. Witt, 223 N.J. 409, 418–19 (2015) (holding that the "mere filing of a motion to suppress under Rule 3:5-7(a)" does not "require[] the State 'to justify every aspect of the warrantless search'" and that a defendant "must make known [his or her] positions at the suppression hearing so that the trial court can rule on the issues before it").]

As noted, defendant's present contention that the indictment should have been dismissed because a MVR recording may not have been made or produced was not raised before the trial court. Therefore, we need not review it.

Just as importantly, defendant entered an unconditional guilty plea in this case. It is well established that "a guilty plea constitutes a waiver of all issues which were or could have been addressed by the trial judge before the guilty plea." State v. Davila, 443 N.J. Super. 577, 585 (App. Div. 2016) (quoting State v. Robinson, 224 N.J. Super. 495, 498 (App. Div. 1988).

This principle even prohibits "a defendant who pleads guilty . . . from raising, on appeal, the contention that the State violated his constitutional rights prior to the plea." State v. Knight, 183 N.J. 449, 470 (2005) (quoting State v. Crawley, 149 N.J. 310, 316 (1997)).[4] In Knight, the Supreme Court held that

_____

[4] However, a defendant who pleads guilty may always appeal the denial of a motion to suppress evidence on the grounds of unlawful

"[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Id. at 470 (quoting Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d 235, 243 (1973)).

We therefore conclude that because defendant entered an unconditional guilty plea, he waived his right to contest the indictment on appeal. Therefore, we reject defendant's contention on this point.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

search and seizure. Knight, supra, 183 N.J. at 471; R. 3:5-7(d). A defendant may also "appeal after a guilty plea from an order denying entry into the pre-trial intervention program." Davila, supra, 443 N.J. Super. at 586 (citing Knight, supra, 183 N.J. at 471. "Lastly, pursuant to Rule 3:9-3(f), a defendant may appeal those adverse decisions specifically reserved by a conditional guilty plea entered in accordance with the Rule." Ibid. (citing Knight, supra, 183 N.J. at 471).

A-3752-14T2