**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4606-15T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KEVIN J. SCUCCIMARRI,

     Defendant-Appellant.

_____

> Argued October 10, 2018 – Decided October 31, 2018
>
> Before Judges Yannotti and Gilson.
>
> On appeal from Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 14-08-0893.
>
> Logan M. Terry argued the cause for appellant.
>
> Joie D. Piderit, Assistant Prosecutor, argued the cause for respondent (Andrew C. Carey, Middlesex County Prosecutor, attorney; Joie D. Piderit, of counsel and on the brief).

PER CURIAM

Defendant Kevin J. Scuccimarri pled guilty to first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), and he was sentenced to eighteen years of incarceration, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant appeals from the judgment of conviction (JOC) dated May 19, 2016. We affirm.

I.

A Middlesex County grand jury charged defendant with first-degree knowing and purposeful murder, N.J.S.A. 2C:11-3(a)(1) or (2) (count one); third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(1) (counts two and three); and third-degree terroristic threats, N.J.S.A. 2C:12-3(b) (count four). Defendant also was charged under W-2013-694-1217 with criminal mischief, N.J.S.A. 2C:17-3(b)(2), a disorderly persons offense.

Defendant filed a motion to suppress two recorded statements he provided to the police on September 3, 2013, with regard to Sherry Richardson, who had been reported missing. Richardson was defendant's former girlfriend, and they had four children together. In September 2013, defendant and Richardson were living apart. Defendant and the children were living with his parents in their home in Piscataway, and Richardson was living in Middlesex Borough. After

the police advised defendant of his <u>Miranda</u> rights,[1] he gave the police two statements, one in the morning and one in the afternoon.

The judge filed a written opinion in which he found that after about one hour and twenty-one minutes of questioning during the morning interview, defendant had invoked his right to counsel and thereafter the police continued the interrogation in violation of defendant's right to counsel under the Sixth Amendment to the United States Constitution. The judge entered an order dated June 29, 2015, suppressing the portion of the morning interview that continued after defendant asserted his right to counsel, and the entire afternoon statement.

Defendant also filed a motion to suppress physical evidence, specifically the evidence regarding the discovery of Richardson's body. Defendant argued that the court should grant the motion because in the suppressed portion of his statement, he admitted killing Richardson and led the police to her body. In response, the State argued that based on other information the police had, including the portion of defendant's statement that was not suppressed, it was inevitable the police would find Richardson's body.

On December 15, 2015, the judge conducted an evidentiary hearing on defendant's suppression motion. At the hearing, the State presented testimony

___

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

from Detective Dan Kapsch of the Piscataway Police Department. The State also presented testimony from Captain Jacqueline Molnar and Investigator Brie Curran of the Middlesex County Prosecutor's Office. Defendant presented no witnesses.

After hearing the testimony, the judge placed an oral decision on the record. The judge found that the State had proven by clear and convincing evidence that even without defendant's suppressed confession, the police would have inevitably discovered Richardson's body. The judge entered an order dated December 22, 2015, denying defendant's motion to suppress.

On March 30, 2016, defendant pled guilty to count one, which was amended to charge first-degree aggravated manslaughter, contrary to N.J.S.A. 2C:11-4(a)(1). The State agreed to recommend that the court sentence defendant to eighteen years of incarceration, with an eighty-five percent period of parole ineligibility pursuant to NERA. The State also agreed to dismiss the remaining charges.

The judge sentenced defendant on May 18, 2016. The judge found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk that defendant will commit another offense); and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others from violating the law). The judge found no mitigating

factors.  The judge sentenced defendant in accordance with the plea agreement to eighteen years in prison, subject to NERA.  The judge also ordered defendant to make restitution in the amount of $5000 and imposed other fees and penalties.  The judge filed the JOC dated May 19, 2016.

This appeal followed.  On appeal, defendant argues:

POINT I
IT WAS ERROR FOR THE TRIAL COURT TO ADMIT THE DISCOVERY OF THE BODY INTO EVIDENCE WITHOUT A SCINTILLA OF PROOF THAT THE POLICE HAD A POLICY REGARDING PROPER, NORMAL OR SPECIFIC INVESTIGATORY PROCEDURES.

POINT II
THE APPELLATE COURT SHOULD VACATE THE CONVICTION BECAUSE THE PROSECUTOR VIOLATED [DEFENDANT'S] RIGHT TO AN ACCURATE AND TRUTHFUL PRESENTATION TO THE GRAND JURY.

POINT III
THE VIOLATION OF THE FIFTH AMENDMENT RIGHT TO FORTHRIGHT GRAND JURY PRESENTATION [,] . . . THE VIOLATION OF HIS RIGHT AGAINST SELF-INCRIMINATION[,] AND THE [MIRANDA] VIOLATION WAS CUMULATIVE ERROR DENYING [DEFENDANT] DUE PROCESS OF LAW AND FUNDAMENTAL FAIRNESS.

POINT IV
THE EIGHTEEN YEAR EIGHT[Y-]FIVE PERCENT SENTENCE IMPOSED ON DEFENDANT WAS AN

5

ABUSE OF DISCRETION BECAUSE IT WAS
EXCESSIVE.

## II.

We turn first to defendant's contention that the judge erred by denying his motion to suppress evidence regarding the discovery of Richardson's body. He contends the judge erred by applying the inevitable discovery doctrine.

Generally, the exclusionary rule precludes the admission of evidence obtained as a result of a violation of a defendant's constitutional rights. State v. Shannon, 222 N.J. 576, 585 (2015). There are, however, exceptions to this general rule.

One exception is the "inevitable discovery" doctrine. State v. Sugar (Sugar II), 100 N.J. 214, 236 (1985) (citing Brewer v. Williams, 430 U.S. 387, 406 n.12 (1977)). The doctrine is a "logical extension" of the "independent source rule [which] allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." Id. at 237 (citing Nix v. Williams, 467 U.S. 431, 443 (1984)).

In Sugar II, the Court held that for purposes of the New Jersey Constitution, evidence that would otherwise be subject to the exclusionary rule may be admitted if the State establishes by clear and convincing evidence that:

> (1) proper, normal, and specific investigatory
> procedures would have been pursued in order to

6

complete the investigation of the case; (2) under all of the surrounding relevant circumstances the pursuit of those procedures would have inevitably resulted in the discovery of the evidence; and (3) the discovery of the evidence through the use of such procedures would have occurred wholly independently of the discovery of such evidence by unlawful means.

[Id. at 238-40.]

The Court clarified the test in State v. Sugar (Sugar III), 108 N.J. 151 (1987).  The Court stated that, "[t]o establish the inevitability of discovery of evidence, the State need not demonstrate the exact circumstances of the evidence's discovery," or "the exclusive path leading to the discovery" of the evidence.  Id. at 158.

Instead, the State may satisfy its burden by demonstrating that "such discovery would occur in one or in several ways," so long as the State "present[s] facts sufficient to persuade the court, by a clear and convincing standard, that the [evidence] would be discovered."  Id. at 158-59.  Therefore, "[t]he State need only present facts or elements—proving each such fact or element by a preponderance of the evidence—that in combination clearly and convincingly establish the ultimate fact and lead to the conclusion that the evidence would be inevitably discovered."  Id. at 159 (citing State v. Brown, 80 N.J. 587, 592 (1979)).

7

On appeal, defendant argues that the State failed to meet its evidentiary burden for application of the inevitable discovery doctrine. We disagree.

We note initially that the motion judge's factual findings in a suppression hearing should be upheld so long as they are "supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243 (2007). Furthermore, we must give deference to the trial court's factual findings when they are "substantially influenced" by the court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Id. at 244 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

In his decision, the judge noted that on September 3, 2013, the police knew that Richardson had been reported missing, and they suspected defendant was involved in her disappearance. In the unsuppressed portion of his morning statement, defendant admitted he had been with Richardson from midnight until 6:00 a.m., and they were near his residence in Piscataway before he took her to her home in Middlesex Borough. Kapsch testified that the police knew defendant and Richardson, and were aware they had a volatile relationship, which included domestic violence. Kapsch said he suspected foul play in Richardson's disappearance.

A-4606-15T4

The judge found that the search for Richardson would have led to a thorough search of the woods near defendant's home. The record shows that, earlier in the morning, defendant's mother had called the police to the residence because defendant had been burning something outside the home and he was acting erratically. The police responded to the residence, and in the yard, the police found a metal barrel with a fire, which they extinguished.

The police recovered burned clothing and boots, which were stained with mud. Kapsch testified that the police also found "[s]meared dried up mud" on the hood of defendant's car. Molnar stated that the police would have looked for the source of the mud and they would have focused their search on the woods and creek near defendant's home.

The motion judge found the search would have led the police to the patch of disturbed earth next to the creek where Richardson's body was found. The judge pointed out that there was a natural entry point into the woods, and the woods was "the one area in [the] whole neighborhood where you can act in secret, where you cannot be seen[.]" The judge noted that the police found Richardson's body near that natural entry point.

Kapsch also testified that the police would have conducted a thorough search of the entire area, including the wooded area behind defendant's home.

9

Kapsch stated that the search would have included Blueberry Court, which was two blocks from defendant's home. On the ground of a driveway at Blueberry Court, the police recovered the vehicle registration for defendant's car. The police also observed drag marks on the grass going toward the stream, and photographic evidence showed drag marks on the ground near the burial site.

In addition, Curran testified that the grass near the burial site appeared to be pressed down. The investigators also found a container for contact lenses and a stick of lip balm on the ground. These items appeared to have been dropped recently. Curran stated that a small plot of earth in the area initially stood out as suspicious because it contained uprooted, churned grass and darker soil. This indicated that the soil on the ground had come from beneath the surface. Curran testified that, based on these observations, this location would have been a prime area to focus search efforts.

The judge concluded that there was no doubt the discovery of the body was inevitable. The judge stated that the search probably would not have taken long because the area to be searched was relatively small. The judge added that the police would have walked down the bed of the stream, and it was inevitable they would have found Richardson's body "in short order."

A-4606-15T4

We are convinced there is sufficient credible evidence in the record to support the judge's findings of fact. The record supports the judge's conclusion that the State had established by clear and convincing evidence that the police would have found Richardson's body, even without the information provided in defendant's suppressed statements.

Defendant argues, however, that the State failed to prove that the police followed "proper, normal and specific investigatory procedures" as required by Sugar II. He contends the State did not establish a "best-practice" protocol, a search pattern or method, or even an ad hoc plan to search for Richardson.

However, as we stated previously, the inevitable discovery doctrine may be applied if the State establishes a hypothetical series of events that would have inevitably led to the discovery of the evidence. Sugar III, 108 N.J. at 163-65. Furthermore, the State does not have to prove that the police would have employed any one particular investigatory process in its search for the evidence, or a "best-practice" protocol. Id. at 158-59.

Here, the State presented evidence of "[a] number of possibilities" that cumulatively established "clear and convincing" proof the police would have inevitably discovered Richardson's body. See id. at 159. The State's witnesses testified that they would have essentially followed normal, routine search

11

procedures in searching for Richardson. The judge found the State's witnesses were credible.

Defendant further argues that in finding that the discovery of Richardson's body was inevitable, the judge erred by relying upon the recovery of defendant's vehicle registration card on a driveway near the burial site. He contends the State failed to establish that a hypothetical investigation would have led the police to the registration card unless they conducted an illegal search of the property.

In his decision, the judge specifically found that even without the registration card, the police would have searched the wooded area. In any event, the record does not support defendant's contention that the police would not have found defendant's vehicle registration card unless they conducted an illegal search of private property on Blueberry Court.

Molnar testified that a proper investigation would have included a thorough "canvassing" of the neighborhood. Thus, the police would have knocked on the doors of neighbors and searched the area for physical evidence. In all likelihood, the property owners would have cooperated with the police, and allowed the officers to walk through the driveway, where the registration card was found.

We therefore conclude the judge did not err by denying defendant's motion to suppress evidence regarding the discovery of Richardson's body. The judge's application of the inevitable discovery doctrine was consistent with Sugar II and Sugar III, and supported by sufficient credible evidence.

III.

Next, defendant argues his conviction should be reversed because the State allegedly violated his right to an accurate and truthful presentation of evidence before the grand jury. According to defendant, the assistant prosecutor told the grand jury that Richardson's sister had called the police and reported her sister was missing. He contends the assistant prosecutor failed to inform the grand jury that the police called Richardson's sister while they were interviewing him.

Defendant argues this alleged misrepresentation was the "first brick" in the State's attempt to lay a foundation for application of the inevitable discovery doctrine. He contends the State's grand jury presentation was an attempt to present a false factual scenario, whereby Richardson's body would have been discovered even without his illegally-obtained confession.

This argument was not raised in the trial court, and defendant did not preserve the issue for appeal when he pled guilty. "Generally, a defendant who

13

pleads guilty is prohibited from raising, on appeal, the contention that the State violated his constitutional rights prior to the plea." State v. Knight, 183 N.J. 449, 470 (2005) (first quoting State v. Crawley, 149 N.J. 310, 316 (1997); then citing Tollett v. Henderson, 411 U.S. 258, 267 (1973)).  There are, however, exceptions to this general principle.

First, a defendant may appeal from the denial of a motion to suppress evidence after a guilty plea. Id. at 471 (citing R. 3:5-7(d)).  Second, a defendant may appeal from the denial of admission into pretrial intervention (PTI).  Ibid. (citing R. 3.28(g)).  Finally, a defendant may appeal an issue preserved by entry of a conditional plea.  Ibid. (citing R. 3:9-3(f)).  The exceptions do not apply because defendant is challenging what happened before a grand jury.  Such a challenge should have been made in a motion to dismiss the indictment, but no such motion was filed.  Therefore, defendant waived the right to raise the issue on appeal.

Nevertheless, we are convinced the argument is entirely without merit. The record does not support defendant's claim that the assistant prosecutor misrepresented facts concerning when the Piscataway police learned that Richardson had been reported missing.  Moreover, the timing of the report was not material to the application of the inevitable discovery doctrine.  That

14

decision turned upon the evidence presented at the suppression hearing, not statements the assistant prosecutor may have made before the grand jury about when Richardson was reported missing.

We therefore reject defendant's contention that the State did not present an accurate and truthful presentation of the facts before the grand jury.

IV.

Defendant also argues that his sentence is excessive and constituted an abuse of the judge's discretion. Again, we disagree.

We review the imposition of a sentence under an abuse of discretion standard. State v. Jones, 232 N.J. 308, 318 (2018). In doing so, we must determine whether: "(1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were . . . 'based upon competent credible evidence in the record;' [and] (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (third alteration in original) (quoting State v. Roth, 95 N.J. 334, 364–65 (1984)).

"An appellate court is bound to affirm a sentence, even if it would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent

15

credible evidence in the record." State v. O'Donnell, 117 N.J. 210, 215 (1989) (first citing State v. Jarbath, 114 N.J. 394, 400-01 (1989); then citing Roth, 95 N.J. at 364-65).

On appeal, defendant argues the judge should have taken certain mitigating factors into consideration when sentencing him. He contends the judge should have considered that Richardson was in poor health, which may have caused her to die more quickly when he strangled her. He also contends the judge should have considered that he was intoxicated when he strangled Richardson. Defendant further argues that the judge should have considered that he stabbed Richardson after she was already dead, as a means to help him hide the body, not to kill her.

As we noted previously, the judge found aggravating factors three and nine, and found no mitigating factors. The judge also explained that mitigating factor one did not apply. N.J.S.A. 2C:44-1(b)(1) (defendant's conduct did not cause or threaten serious harm). The judge stated that "obviously" the most serious of harm had occurred and defendant's conduct caused that harm.

The judge found mitigating factor two did not apply. N.J.S.A. 2C:44-1(b)(2) (defendant did not contemplate conduct would cause or threaten serious harm). The judge noted that it "takes time to choke the life out of someone" and

16

there is always "an opportunity to stop." The judge pointed out that defendant stabbed Richardson after he choked her. According to the judge, defendant showed a reckless disregard for the serious harm his conduct would inflict upon Richardson.

In addition, the judge refused to find mitigating factor three. N.J.S.A. 2C:44-1(b)(3) (defendant acted under strong provocation). The judge rejected defendant's claim that he acted under strong provocation because Richardson purportedly indicated she had a new boyfriend while they drove past her new boyfriend's residence. The judge found that this was "an excuse, not a provocation." The judge pointed out that defendant did not act when faced with this alleged provocation. He waited until later, after he had driven back to Piscataway.

The judge also found no basis for finding mitigating factor four. N.J.S.A. 2C:44-1(b)(4) (substantial grounds to excuse or justify defendant's conduct, though failing to establish a defense). The judge noted that defendant had claimed he acted as a result of a verbal argument with Richardson. The judge determined that this was not a justification for defendant's actions.

Moreover, the judge found mitigating factor five did not apply. N.J.S.A. 2C:44-1(b)(5) (the victim's conduct induced or facilitated commission of the

offense). The judge stated that he would not blame the victim for her "past failings," which are unfortunately "all too common." The judge also stated that "yelling and screaming does not induce homicide."

The judge further found the record did not support application of mitigating factors six, N.J.S.A. 2C:44-1(b)(6) (restitution); seven, N.J.S.A. 2C:44-1(b)(7) (defendant has no history of delinquency or criminal activity); eight, N.J.S.A. 2C:44-1(b)(8) (defendant's conduct was the result of circumstances not likely to recur); nine, N.J.S.A. 2C:44-1(b)(9) (defendant's character and attitude indicate he is unlikely to commit another crime); eleven, N.J.S.A. 2C:44-1(b)(11) (incarceration would entail excessive hardship to defendant or his dependents); or twelve, N.J.S.A. 2C:44-1(b)(12) (willingness to cooperate with law enforcement).

We are convinced there is sufficient credible evidence in the record to support the judge's findings of fact. Defendant's argument that the sentence is excessive lacks sufficient merit to warrant further comment. R. 2:11-3(e)(2). We conclude the sentence imposed here is not an abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4606-15T4